COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judge Coleman and Senior Judge Duff
Argued at Alexandria, Virginia

JOHN LESLIE NEAL

v. Record No. 0694-97-4

OPINION BY CHIEF JUDGE JOHANNA L. FITZPATRICK
APRIL 28, 1998

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
Dennis L. Hupp, Judge

Elwood Earl Sanders, Jr., Director Capital/ Appellate Services (Jay K. Wilk; Public Defender Commission, on briefs), for appellant.

Marla Graff Decker, Assistant Attorney General (Richard Cullen, Attorney General, on brief), for appellee.

John Leslie Neal (appellant) was convicted in a jury trial of operating a motor vehicle after having been declared an habitual offender in violation of Code § 46.2-357(B)(3) and operating a motor vehicle while intoxicated in violation of Code § 18.2-266. On appeal, he contends the trial court erred in admitting evidence obtained as a result of an unreasonable investigatory stop. We disagree and affirm the convictions.

I.

"'On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997) (citation omitted). On May 9, 1996, around 7:20 p.m., Trooper Jonathan D.

Fainter was on patrol in Shenandoah County when he received a call to "be on the lookout" for a "reckless" driver southbound on Interstate 81. Fainter was in the area and proceeded south. He saw the vehicle and got "close enough" to observe it for approximately one-half mile, which he estimated took approximately twenty-five seconds. During this time, the car was traveling at sixty-five miles per hour in the right lane of two southbound traffic lanes and "[t]he vehicle, numerous times, would weave to the center of the highway, then back to the right, just constantly moving from side to side in its lane." Over "that half-mile distance, it kept sort of weaving inside of his lane," between five and ten times. The car crossed into the left southbound lane and it "touched, just touched the line" on the right side of the lane. After approximately twenty-five seconds of observation, Fainter, who had been involved in eighteen DUI arrests in 1996, stopped the car to investigate because he was "concerned" about the erratic driving. Appellant, the driver of the car, could not produce his driver's license or registration. Fainter smelled the odor of alcohol coming from the vehicle, and he asked appellant to step out of the car. When asked, appellant admitted, "Yes, we've been drinking."

During the investigative stop, appellant was unsteady on his feet and had to use the car to balance himself as he accompanied Fainter to the patrol car. Additionally, appellant had bloodshot eyes, smelled of alcohol, and slurred his speech. Appellant

voluntarily submitted to a blood alcohol test and was arrested for driving under the influence of alcohol. He was subsequently charged with driving after having been declared an habitual offender.

Appellant did not file a pretrial motion to suppress the evidence alleged to have been illegally obtained as a result of the investigatory stop.[1] At trial, after the Commonwealth rested, appellant moved to strike Fainter's testimony on the ground the Commonwealth failed to prove the trooper had "probable cause" to stop appellant's car.[2] The trial court denied the motion, finding that the combination of the "be on the lookout" warning and the observed weaving "would have given rise to a stop."

II.

Appellant contends Trooper Fainter lacked reasonable, articulable suspicion necessary to stop the vehicle. We disagree and hold that repeated weaving within a lane provides sufficient reasonable and articulable suspicion to justify an investigatory

---

[1]The Commonwealth contends appellant's failure to address the reasonableness of the stop in a pretrial motion to suppress deprived the Commonwealth of its right to a pretrial appeal under Code § 19.2-398. The question is moot as the trial court decided the motion in the Commonwealth's favor, rendering an appeal unnecessary.

[2]Although appellant's motion to strike incorrectly held the Commonwealth to the standard of probable cause for the stop, rather than the lesser standard of reasonable and articulable suspicion, this error was harmless as the greater burden clearly encompassed the lesser.

stop.

"'Ultimate questions of reasonable suspicion and probable cause' . . . involve questions of both law and fact and are reviewed de novo on appeal." McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (quoting Ornelas v. United States, 517 U.S. 690, ___, 116 S. Ct. 1657, 1659 (1996)). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

"'[W]hen the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes.'" Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (quoting Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988)). "In order to justify an investigatory stop of a vehicle, the officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or have recently been involved in, some form of criminal activity." Logan, 19 Va. App. at 441, 452 S.E.2d at 367. "To determine whether an officer has articulated a reasonable basis to suspect criminal activity, a court must consider the totality of the circumstances, including the officer's knowledge, training, and experience." Freeman v. Commonwealth, 20 Va. App. 658, 661, 460 S.E.2d 261, 262 (1995)

(citing Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989)). "'[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer.'" Freeman, 20 Va. App. at 661, 460 S.E.2d at 262 (quoting Taylor v. Commonwealth, 6 Va. App. 384, 388, 369 S.E.2d 423, 425 (1988)).

We have held that weaving within a lane, in combination with unusually slow speed, may create a reasonable and articulable suspicion of illegal activity justifying an investigatory stop. See Freeman, 20 Va. App. 658, 460 S.E.2d 261. However, the question of whether weaving within a lane, without more, may support an investigatory stop is an issue of first impression in Virginia.

In Freeman, we acknowledged that

> [o]ther jurisdictions have considered whether similar circumstances give rise to a reasonable suspicion that a driver is intoxicated and have held that weaving within a traffic lane or travelling at an inordinately slow rate of speed under the circumstances is sufficient to justify an investigatory stop.

20 Va. App. at 661, 460 S.E.2d at 262 (emphasis added). Several of these jurisdictions have held that weaving within a single traffic lane, without more, is sufficient to justify an investigatory stop. See People v. Diaz, 617 N.E.2d 848, 851 (Ill. App. Ct. 1993) ("[T]he officer's own observation of defendant's erratic driving provided a sufficient basis for the stop. This is true regardless of whether defendant crossed the

white line or stayed within the same lane, since weaving within a lane is sufficient grounds for a stop."); People v. Loucks, 481 N.E.2d 1086, 1087 (Ill. App. Ct. 1985) ("[w]eaving [continuously for two blocks] within the lane of traffic in which a vehicle is traveling provides a sufficient basis for an investigatory stop of a motor vehicle"); State v. Malaney, 871 S.W.2d 634 (Mo. Ct. App. 1994) (investigatory stop was reasonable where the officer observed a vehicle weaving within its lane three times over a distance of one mile); State v. Watson, 472 S.E.2d 28, 30 (N.C. Ct. App. 1996) (officer who observed defendant's vehicle "weaving back and forth within his lane for 15 seconds" on a road near a nightclub had a reasonable suspicion of illegal activity); State v. Gedeon, 611 N.E.2d 972, 973 (Ohio Ct. App. 1992) ("weaving within one's lane alone presents a sufficient scenario for an officer to conduct an investigatory stop"). But see New Lebanon v. Blankenship, 65 Ohio Misc.2d 1, 640 N.E.2d 271 (1993) (weaving on a road without a center line marking the lanes was insufficient to justify an investigatory stop).

We agree with our sister states that weaving within a single traffic lane is an articulable fact which may give rise to a reasonable suspicion of illegal activity. An isolated instance of mild weaving within a lane is not sufficiently erratic to justify an investigatory stop. Cf. United States v. Gregory, 79 F.3d 973 (10th Cir. 1996) (investigatory stop not justified when a truck crossed once onto the right shoulder of a winding

mountain road on a windy day). The test is one of reasonableness under "the totality of the circumstances." Freeman, 20 Va. App. at 661, 460 S.E.2d at 262.

In the instant case, the officer observed appellant's vehicle for twenty-five seconds weaving repeatedly within its lane between five and ten times over a distance of a half-mile. Trooper Fainter had experience with intoxicated drivers, and in light of that experience, he suspected that the erratic driver was either inattentive or impaired. Under these circumstances, we hold that repeated weaving in one's own lane gave the officer reasonable and articulable suspicion to stop the vehicle and investigate further.[3] Consequently, we affirm the convictions.

Affirmed.

[3]Additionally, appellant claims Fainter's testimony established no specific training or experience regarding intoxicated drivers. See Helms v. Commonwealth, 10 Va. App. 368, 392 S.E.2d 496 (1990). Appellant's contention lacks merit. The record provided uncontested evidence of the officer's experience with intoxicated drivers. Furthermore, the record established that Fainter's basis for the stop was to investigate erratic driving behavior, which clearly could encompass more than intoxication.