COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Elder and Frank
Argued at Chesapeake, Virginia


THOMAS RALPH RIFFLE, JR.

MEMORANDUM OPINION[*] BY
v.        Record No. 0145-03-1        JUDGE JAMES W. BENTON, JR.
                                      SEPTEMBER 14, 2004

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Norman Olitsky, Judge

John W. Brown (Brown, Denslow, Black & Billups, P.C., on brief),
for appellant.

Josephine F. Whalen, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


The trial judge convicted Thomas R. Riffle, Jr. of forcible sodomy of a child, in violation of

Code § 18.2-67.1, and aggravated sexual battery of a child, in violation of Code § 18.2-67.3.  Riffle

contends the trial judge erred by allowing a witness to express an opinion about the credibility of the

child.  For the reasons that follow, we affirm the convictions.

I.

Riffle's teenage daughter testified that in the summer of 2000, when she was eleven years

old, Riffle entered her bedroom to wake her.  She testified that she pretended to be asleep and did

not respond.  Riffle left the room, but then returned and got into bed with her.  While she feigned

sleep, he pulled down her underwear, placed his penis between her legs and against her vagina, and

began moving.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

She testified that a year later, while she was watching a movie at home with Riffle, he asked her to join him on the sofa in order to "cuddle." She did and feigned sleep. He left the room and later returned to lie on the sofa behind her. As they were lying on the sofa, Riffle pulled down her underwear and slowly put his penis in her "butt-hole," moving back and forth. She testified that she had diarrhea the next day. She testified about several other incidents of sexual contact and testified that these events occurred only when Riffle thought she was asleep.

Dr. Jeffrey Schlichter, a clinical psychologist, testified he first encountered the child in 1999 when, following her parents' divorce, Riffle brought her for an evaluation. Dr. Schlichter said those sessions ended in June of 1999 and he did not see her again until February of 2001, "when her mother brought her after [the child had] gotten very upset over an incident that had occurred in her father's house the night before." Dr. Schlichter testified that the child was uncomfortable discussing the abuse she reported but that over the course of several visits she became more comfortable, describing five occasions in which she believed Riffle had sexually abused her. On cross-examination, Dr. Schlichter testified that, when he had a conference with Riffle, Riffle's new wife, and the child together, the child "became rather passive . . . because[, he opined,] she was overpowered." He also acknowledged various "signs of sexual abuse that are triggers or flags" and testified that the child "clearly had some adjustment problems."

On redirect examination, Dr. Schlichter explained that the child tended to be ambiguous about exact times, dates, and places. He explained:

> There was a lot of ambiguity in a lot of it, and I think this typifies
> [the child. She] has been ambivalent about lots of thing in terms of
> the details. She has been ambivalent about her relationship with
> her father particularly in terms of where she wants to live. But I
> think what's impressive is the fact that she still says she loves her
> father. She wants to be with him. She wishes he would not have
> done these things, and she would like him to stop, which to me is
> one of the most important dynamics about this case.

The trial judge then asked, "Why is that an important dynamic?" Dr. Schlichter responded as follows:

>        Because in instances in which particularly adolescents are fabricating things, one of the things you often get is a very one-sided -- I hate him. He should die. I never want to see him.

>        And I have dealt with a lot of abused children in my life, and I don't know that I can recall in 22 years of any abused child who's actually been abused who said to me after a while that they never wanted to see their parents again. I've had kids sitting there who've had all sorts of horrible things done to them, and they still want to see their parents.

>        So my conclusion is she still wants to see him. She feels badly about what's happened, and I think if Mr. Riffle were to be found guilty and suffer any consequence, the next problem we would have to deal with is she is going to feel very guilty, and I think that's an important issue.

No objection was made by Riffle's attorney to this question or Dr. Schlichter's responses.

At the conclusion of the evidence, the trial judge convicted Riffle of both crimes. After the trial judge sentenced Riffle for these offenses, Riffle filed a motion to set aside the verdict, alleging that Dr. Schlichter gave opinion testimony commenting on the credibility of the child. The trial judge denied the motion.

## II.

"An expert witness may not express an opinion as to the veracity of a witness because such testimony improperly invades the province of the [trier of fact] to determine the reliability of a witness." Pritchett v. Commonwealth, 263 Va. 182, 187, 557 S.E.2d 205, 208 (2002). In denying Riffle's Rule 3A:15 motion to set aside the verdict, the trial judge ruled as follows:

>        Now, this . . . second motion to set aside [is] based upon a doctor, one of the many witnesses in this case, who testified concerning his observations but not as to the guilt and innocence of the defendant, because that sole decision was up to the Court to decide, but [Riffle's attorney] has . . . highlighted an answer of Dr. Slechter [sic] which among other things -- which at the end of his answer to the question said, "Which to me is one of the most

- 3 -

important dynamics about the case," and then the Court asked why that was an important dynamic, and the witness said, "Because of instances in which adolescents are fabricating things. One of the things that you often get is a one-sided, I hate him. I think he should die. I never want to see him," and goes on to dealing with abused children in his life and 23 years and about children never wanting to see their parents. It was just something that he was talking about his experience with children, but the Court based its decision on the facts of the case as to this particular case in this child and this defendant and all of the evidence pertaining to it.

The Commonwealth contends that Rule 5A:18 precludes us from considering this issue on appeal. As the paragraph above reflects, the trial judge considered Riffle's post-trial motion to set aside the verdict to be based upon the claim that the testimony of Dr. Schlichter was susceptible of being considered only as a comment on the ultimate issue. The judge ruled on the merits of the motion, finding that Dr. Schlichter "testified concerning his observations but not as to the guilt and innocence of the defendant," and denied the motion. The trial judge essentially found that the motion raised a sufficiency issue. Because the trial judge had the opportunity to rule on the issue at trial and did so on the merits, we find no basis to invoke Rule 5A:18, which provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling." See Neal v. Commonwealth, 27 Va. App. 233, 236 n.1, 498 S.E.2d 422, 424 n.1 (1998) (holding that a claim of preclusion is moot when the trial judge considered a suppression issue raised by an untimely motion after the Commonwealth's case-in-chief but denied the motion on its merits).

A review of Dr. Schlichter's testimony indicates that, before the trial judge asked his question, Dr. Schlichter was describing the child's "ambivalen[ce] about her relationship with her father" but also opining that her professed love for Riffle was an "important dynamic." Responding to the judge's question, Dr. Schlichter explained that adolescents who fabricate often say they never want to see the parent. He further explained that "an important issue" in this case will be the child's feeling of guilt which will require Dr. Schlichter's intervention. In explaining

- 4 -

his ruling, the trial judge said he considered Dr. Schlichter's testimony to be generally "talking about his experience with children" and did not consider it to be a comment on the child's credibility. The Supreme Court has held that, when evidence has both an admissible purpose and an inadmissible purpose, "[a] judge unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both." Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981). See also Flannery v. City of Norfolk, 216 Va. 362, 368, 218 S.E.2d 730, 735 (1975). This is such a case. The judge has expressed on the record that he did not consider the testimony to be an opinion on the witness' credibility.

We hold, therefore, that the trial judge did not err in denying the motion to set aside the verdict. Accordingly, we affirm the convictions.

Affirmed.

Frank, J., concurring.

I concur with the majority that the judgment should be affirmed, but I would not address the merits because the issue is defaulted under Rule 5A:18.[1]

As the majority indicated, Riffle's attorney did not object to Dr. Schlicter's testimony, which counsel later characterized as commenting on the credibility of the victim.

> [U]nder Rule 5A:18 we do not notice the trial errors for which no timely objection was made except in extraordinary situations when necessary to enable us to attain the ends of justice. The laudatory purpose behind Rule 5A:18, and its equivalent Supreme Court Rule 5:25, frequently referred to as the contemporaneous objection rules, is to require that objections be promptly brought to the attention of the trial court with sufficient specificty [sic] that the alleged error can be dealt with and timely addressed and corrected when necessary. The rules promote orderly and efficient justice and are to be strictly enforced except where the error has resulted in manifest injustice. Errors can usually be corrected in the trial court, particularly in a bench trial, without the necessity of appeal. Because our function is to review the rulings of the trial court, rather than superintend the proceedings, we will notice error for which there has been no timely objection only when necessary to satisfy the ends of justice.

Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989) (citation omitted).

> Generally, a contemporaneous objection on stated specific grounds must be made in the trial court before an appellate court is authorized to review the question of admissibility of evidence. Rule 5A:18; Ingram v. Commonwealth, 1 Va. App. 335, 341, 338 S.E.2d 657, 660 (1986). To be timely, an objection to the admissibility of evidence must be made when the occasion arises -- that is when the evidence is offered, the statement made or the ruling given. Marlowe v. Commonwealth, 2 Va. App. 619, 621,

---

[1] Rule 5A:18 --

> No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

> 347 S.E.2d 167, 168 (1986). Among the purposes underlying the contemporaneous objection rule are to enable the trial court to prevent error, to cure alleged error with prompt and decisive instruction, and to prevent compounding any harmful consequences by dwelling on irrelevant matters.

Harward v. Commonwealth, 5 Va. App. 468, 473-74, 364 S.E.2d 511, 513 (1988).

The instant case is a grand illustration of the rationale behind the contemporaneous objection rule. The trial court heard the evidence, found Riffle guilty and imposed sentence. Subsequently, Riffle moved the court to set aside the verdict and for the first time raised the admissibility issue. Riffle did not make this argument known to the trial court until four months after trial. "'Thus, the objection came too late for any error to be corrected by the trial court, and for the error, if any, to constitute reversible error.'" Pelletier v. Commonwealth, 42 Va. App. 406, 423 n.4, 592 S.E.2d 382, 390 n.4 (2004) (quoting Ryan v. Commonwealth, 219 Va. 439, 447, 247 S.E.2d 698, 704 (1978)).

If the trial court determined Dr. Schlicter's comments were inadmissible, it could only set aside the verdict and declare a mistrial. Riffle gave the trial court no other remedies. Had Riffle timely objected, the trial court, as fact finder, could have ruled on the objection and proceeded accordingly. The trial court could have continued in an orderly fashion.

A motion to set aside the verdict pursuant to Rule 3A:15 is not the proper vehicle to first dispute the admissibility of evidence previously introduced, yet unchallenged. If such were the case, Rule 5A:18 would be subsumed by Rule 3A:15 and the "contemporaneous objection" rule would have no vitality.

I also respectfully disagree with the majority's characterization of Neal v. Commonwealth, 27 Va. App. 233, 498 S.E.2d 422 (1998). The issue is not whether the trial court had the opportunity to rule on the evidentiary issue, but whether the objection was timely so that the trial court could correct the error.

The majority cites <u>Neal</u> for the proposition that "a claim of preclusion is moot when the trial judge considered a suppression issue raised by an untimely motion after the Commonwealth's case-in-chief but denied the motion on its merits."  In <u>Neal</u>, the defendant did not file a pretrial motion to suppress the evidence, allegedly illegally obtained, but raised the issue for the first time at trial.  The trial court overruled the motion to suppress.  This Court, in footnote 1, said:

> The Commonwealth contends appellant's failure to address the reasonableness of the stop in a pretrial motion to suppress deprived the Commonwealth of its right to a pretrial appeal under Code § 19.2-398.  The question is moot as the trial court decided the motion in the Commonwealth's favor, rendering an appeal unnecessary.

<u>Id.</u> at 237 n.1, 498 S.E.2d at 424 n.1.  The footnote simply concludes that since the Commonwealth prevailed in the motion to suppress, the fact that it was deprived of its right to appeal is moot. There was nothing to appeal.

I also do not find, and appellant does not argue, that a manifest injustice has occurred. The record reflects no reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.  <u>Bazemore v. Commonwealth</u>, 42 Va. App. 203, 218, 590 S.E.2d 602, 609 (2004). Accordingly, I would find that Rule 5A:18 bars consideration of this question on appeal.