# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Sean Garrett Johnson

March 25, 2015

Case No. (Criminal) CR14-746

BY JUDGE DAVID W. LANNETTI

Today the Court rules on the Motion To Suppress filed by Defendant Sean Garrett Johnson. The only issue before the Court is whether the stopping officer had reasonable, articulable suspicion to conduct an investigatory traffic stop of Johnson's vehicle for suspected driving under the influence ("DUI"). The Court finds based on the totality of the circumstances, including the stopping officer's experience, the multiple instances of weaving within the lane and on top of the lane marker, and the mistaken but reasonable belief that Johnson had committed a traffic infraction, that the officer had the requisite reasonable, articulable suspicion to justify the stop. The Court, therefore, denies the Motion To Suppress.

*Background*

The facts of the case are largely undisputed. Johnson was driving a motor vehicle on a road in the City of Norfolk on November 19, 2013. Norfolk Police Officer C. L. Allison (the "Officer"), a Norfolk police officer since 2006 (Tr. 6), was traveling in the same direction when he noticed Johnson's vehicle. The Officer observed Johnson drive straight through what the Officer mistakenly believed to be a right-turn-only lane, which drew the Officer's attention to the vehicle. (*Id.* at 9, 19.) The Officer then pulled alongside Johnson's vehicle and noticed Johnson "had his hands on the wheel and was staring straight ahead." (*Id.* at 21-22.) Next, the

Officer pulled behind and followed Johnson's vehicle and, subsequently, noticed Johnson's vehicle swerving back and forth within its lane. (*Id.* at 7-8, 19-20.) For the purposes of the Court's analysis, including referral to analogous cases, it views "weaving" and "swerving" as synonymous. More specifically, the Officer witnessed Johnson swerve three to five times over a distance of "two-tenths, three-tenths of a mile." (*Id.* at 9.) The Officer then initiated an investigatory traffic stop because he believed Johnson "was inebriated while operating a motor vehicle." (*Id.* at 9.) The dispute arises between the Commonwealth and Johnson as to whether the facts gave rise to a reasonable, articulable suspicion to justify the stop.

The Motion To Suppress came before the Court on December 30, 2014, for a hearing. The Court heard testimony from the Officer, the only witness presented, and argument from counsel. The Court granted leave for the parties to file briefs supporting their respective positions. This Opinion addresses the singular issue before the Court: whether the Officer had reasonable, articulable suspicion to initiate the stop.

### Positions of the Parties

A. *Johnson's Motion To Suppress and Supporting Brief*

Johnson presents his Motion To Suppress on the sole issue of whether the Officer had reasonable, articulable suspicion to conduct an investigatory traffic stop based on a suspected DUI. (Mot. To Suppress 1.) Johnson analogizes the present case to *Commonwealth v. Webb*, 56 Va. Cir. 419 (2001), and claims the facts in the two cases are "strikingly similar." (Br. in Supp. 3.) *Webb* involved an investigatory stop based on the defendant's vehicle "swerving three times within its lane for a distance of [0.3 to 0.5] mile[s]." (*Id.*) In *Webb*, the vehicle's left wheels touched — but did not cross — the middle lane divider of a divided highway; then the right wheels touched or ran along — but did not cross — the outside lane marking; and then the left wheels again touched the middle lane divider, all over a distance of 0.3 to 0.5 miles. *Webb*, 56 Va. Cir. at 420. Johnson stresses the *Webb* court's finding that the swerving was an "isolated instance of mild weaving as opposed to constant weaving." (*Id.* (*citing Webb*, 56 Va. Cir. at 420).) Johnson then cites *Neal v. Commonwealth*, 27 Va. App. 233, 498 S.E.2d 422 (1998), in an attempt to distinguish its facts from those presently before this Court. (*Id.* at 3.) The Virginia Court of Appeals in *Neal* found "that repeated weaving in one's own lane gave the officer reasonable and articulable suspicion to stop the vehicle and investigate further." *Neal*, 27 Va. App. at 239, 498 S.E.2d at 425. Johnson highlights that the swerving in *Neal* was "for twenty-five seconds weaving repeatedly within its lane between five and ten times over a distance of a half-mile." (*Id.* (citing *Neal*, 27 Va. App. at 239, 498 S.E.2d at 425).) Johnson contends that the facts in *Neal* are "far more egregious" than those in the present case and that this

Court therefore should rule consistent with *Webb* and find that there was no reasonable, articulable suspicion to effect an investigatory traffic stop. (*Id.* at 4.)

B. *The Commonwealth's Memorandum in Opposition to Johnson's Motion To Suppress*

The Commonwealth argues that the stop of Johnson's vehicle was based on reasonable, articulable suspicion. (Memo. in Opp'n 6.) According to the Commonwealth, this suspicion arose out of both the Officer's reasonably mistaken belief that Johnson had violated a traffic law and the swerving of Johnson's vehicle. (*Id.* at 2-3.)

The Commonwealth acknowledges that it has the burden of proving that the investigatory stop was lawful. (*Id.* at 2.) The Commonwealth stresses that, even without the swerving, reasonable suspicion "can still exist even if the police are mistaken as to the facts that [they use] to establish reasonable suspicion." (*Id.* at 2 (*citing Harris v. Commonwealth,* 276 Va. 689, 694 (2008)).) The Commonwealth notes that the Officer had a mistake of fact, the mistaken belief regarding the traffic infraction, but that the mistake still could form the basis for an investigatory stop because the mistake was reasonable and made in good faith. (*Id.*) The Commonwealth emphasizes that the Officer's years of experience coupled with the totality of circumstances, the mistaken belief about the traffic infraction and the swerving of Johnson's vehicle, justified the stop. (*Id.*)

The Commonwealth next addresses the swerving of Johnson's vehicle. The Commonwealth asserts that the facts in the case at bar are similar to those in *United States v. Williams,* 945 F. Supp. 2d 665 (E.D. Va. 2013). (*Id.* at 3.) The Commonwealth points out that in *Williams* — as in the present case — the defendant's vehicle was swerving back and forth "at least five times," and the officer continued to follow the defendant to monitor the behavior for a pattern before initiating a stop. (*Id.*) The Commonwealth also notes that the officer in *Williams* — as the Officer here — believed he could initiate a traffic stop for a traffic violation but, instead, continued following and observing the vehicle. (*Id.*) The officer then noticed the pattern of weaving, which led to the investigatory traffic stop based on suspicion that the driver was "impaired." (*Id.*) The Commonwealth stresses that the *Williams* court found that, given the facts, the officer *had* reasonable suspicion to initiate the stop. (*Id.* at 3-4.) By analogy, the Commonwealth believes this Court should find that the Officer had reasonable, articulable suspicion. (*Id.* at 4.)

The Commonwealth then disputes that *Neal* is distinguishable and, instead, argues that *Neal* is analogous to the present case and attempts to differentiate *Webb.* (*Id.* at 4-5.) The Commonwealth argues that *Neal* is similar because the facts there include multiple instances of swerving, which the Commonwealth argues exist here as well. (*Id.* at 4.) The

Commonwealth does not believe the longer distance traveled in *Neal* makes it distinguishable because the Commonwealth claims that the posted speed limit was higher in *Neal* than in the present case, so "the ground covered [here would] be inevitably shorter for a car driven at a lower rate of speed." (*Id.*) The Commonwealth argues that the defendant in *Webb* was weaving within his lane whereas, here, Johnson "stayed mostly in his lane, *but did* 'sway ... *over* the white marker lanes and then back to the solid line." (*Id.* at 5 (*quoting* Tr. 7-8; emphasis in original).) The Commonwealth further argues that the defendant in *Webb* engaged in an isolated instance of swerving, unlike Johnson. (*Id.* (*citing* Tr. 8).)

*Analysis*

A. *Legal Standard*

Pursuant to the exclusionary rule, evidence must be suppressed if it is seized by the government in violation of the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643 (1961). A court shall exclude evidence that was obtained (1) as a direct result of an illegal search and seizure or (2) as a proximate result of an illegal search and seizure. *Wong Sun v. United States*, 371 U.S. 471 (1963). Police can detain a person without probable cause if there is reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968). In determining whether an officer had an objective basis for reasonable, articulable suspicion, a court must consider the totality of the circumstances. *Whitaker v. Commonwealth*, 279 Va. 268 (2010).

Although the threshold level of requisite suspicion for a *Terry* stop is fairly low, the stop cannot be based on certain mistaken beliefs. Courts draw a distinction between an officer's mistake of law and an officer's mistake of fact. Courts generally treat an officer's mistake of law as objectively unreasonable and, therefore, insufficient to justify a *Terry* stop. *Commonwealth v. Snyder*, 2007 Va. App. lexis 307, at *14 (Va. App. Aug. 14, 2007). (As is appropriate, the Court does not consider the unpublished Court of Appeals' Opinion to hold precedential value. The Court instead considers the rationale offered by the Court of Appeals to the extent that the Court finds it persuasive, which is permissible. *See Fairfax County School Board v. Rose*, 29 Va. App. 32, 39, n. 3, 509 S.E.2d 525, 528, n. 3 (1999) ("[A]lthough an unpublished opinion ... has no precedential value ... a court ... does not err by considering the rationale in adopting it to the extent it is persuasive.").) Courts view an officer's mistake of fact, by contrast, as acceptable if it is objectively reasonable. *Barnette v. Commonwealth*, 23 Va. App. 581, 584, 478 S.E.2d 707, 708 (1996). Courts, therefore, find that stops and subsequent searches based on a mistake of law are illegal, and any evidence acquired from the illegal search must be suppressed. Courts find that stops and subsequent searches based on a mistake of fact, on the other hand, are illegal only if the mistake of fact was not objectively reasonable.

When responding to a motion to suppress, the Commonwealth has the burden to prove admissibility of the seized evidence by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157 (1986). Police actions are tested under objective reasonableness without regard to the underlying intent or motivation of the officers. *Poindexter v. Commonwealth*, 16 Va. App. 730 (1993).

## B. *Discussion*

The Court has considered the pleadings, testimony and oral argument at the December 30, 2014, hearing, and applicable authorities. This Opinion rules on the sole issue before the Court: whether Officer Austin had reasonable, articulable suspicion to stop Johnson's vehicle considering the totality of the circumstances.

### 1. *Factual Findings*

The parties' recitations of the facts in their briefs are inconsistent. The Commonwealth asserts that Johnson's swerving resulted in his vehicle traveling "over" the white marking line, (Mot. in Opp'n 1, 5), whereas Johnson contends that there was no such crossing. (Br. in Supp. 1.) The Court finds that Johnson mostly swerved within his lane markers, but his vehicle did at times travel on top of a lane marker.

The Court makes this determination after a careful review of the transcript from the December 30, 2014, hearing, during which only the Officer testified (making his testimony uncontroverted). At the hearing, although the Officer initially appeared to indicate that Johnson swerved outside of the lane (Tr. 7-8), he later clarified and stated that Johnson never actually crossed the lane marker and instead "swerved right on top of it and [went] back over towards the right-hand solid marking line." (Tr. 19-20.) Although his use of the phrase "over the white marker lanes" (Tr. 7) arguably could indicate that the vehicle either traversed across the lane marker into the adjacent lane or merely traveled on top of the lane marker without entering the adjacent lane (as was the case here), the Officer's testimony ultimately was clear and the Commonwealth's distinction between the facts in *Webb* and the facts here regarding this issue is either incorrect or unhelpful, as the vehicles in both cases traveled on top of a lane marker.

The parties also disagree regarding whether Johnson's swerving constituted a single, sinuous swerve or multiple cycles of swerving. (Br. in Supp. 3; Memo in Opp'n 4.) The Court finds that Johnson's vehicle swerved three to five times, and not just once. The Court also makes this determination after a careful review of the transcript from the December 30, 2014, hearing. (Tr. 7-9, 19-20.) The Court also finds that Officer Austin, having served approximately seven years as a law enforcement officer, was an experienced officer. As in *Webb*, no testimony was elicited at the hearing

regarding the Officer's training and experience specifically dealing with recognition of impaired or intoxicated drivers.

### 2. Movement of Johnson's Vehicle

In evaluating the movement of Johnson's vehicle, the Court first compares the present facts to facts in other cases in the Commonwealth involving investigatory traffic stops based on suspicion of DUI. The Court looks to three cases in particular: *Neal v. Commonwealth*, 27 Va. App. 233, 498 S.E.2d 422 (1998); *King v. Commonwealth*, 1995 Va. App. lexis 8 (Va. App. Jan. 3, 1995) (*see supra*); and *Commonwealth v. Webb*, 56 Va. Cir. 419 (City of Danville 2001).

The Court acknowledges the Commonwealth's citation to *United States v. Williams*, but, upon careful review, finds that a comparison of the present facts to *Neal, King*, and *Webb* is more appropriate, as *Williams* involved facts more egregious than even those in *Neal* (*i.e.*, a "vehicle repeatedly weaving and driving on one of the [lane markers] on at least five occasions," a vehicle that crossed the center line and went into the adjacent lane, a citation for "Failure To Maintain a Single Lane of Traffic"). *Williams*, 945 F. Supp. 2d 665 (E.D. Va. 2013).

In *Neal*, the Court of Appeals found that repeated weaving within a lane, five to ten times over 0.5 miles spanning twenty-five seconds and witnessed by an officer with "experience with intoxicated drivers," was *sufficient* for reasonable suspicion. *Neal*, 27 Va. App. at 239, 498 S.E.2d at 425. In *King*, the Court of Appeals, by contrast, held that a "momentary drift" across a lane divider after unrequired stopping at a yield sign was *insufficient* for reasonable suspicion. *King*, 1995 Va. App. lexis at *3-4. The facts in *Webb* fell somewhere between those in *Neal* and *King*, and the court found that "one complete cycle" of weaving over 0.3 to 0.5 miles was *insufficient* for reasonable suspicion. *Webb*, 56 Va. Cir. at 420.

The case before this Court is somewhere between *Webb* and *Neal* with respect to the weaving. Considering the findings of the Court, cases cited by the parties, and other applicable case law and authorities, however, the Court finds that the facts in the present case are more egregious than those in *Webb* and more analogous to those in *Neal*. Here, there was weaving three to five times over 0.2 to 0.3 miles, whereas in *Webb* there was one isolated instance of weaving over 0.3 to 0.5 miles and in *Neal* there was weaving five to ten times over 0.5 miles. Although the Court generally agrees with the Commonwealth that, when comparing the facts of the present case to those in *Neal*, a lower speed limit would allow the Officer a longer observation of Johnson's vehicle over a given distance (Memo. in Opp'n 4-5), no testimony was elicited regarding the posted speed limit, the speed of Johnson's vehicle, or the Officer's observation time of Johnson's vehicle; the Court therefore disregards the Commonwealth's argument in this regard.

Of note, the officer in each of the cases was experienced, although admittedly the evidence in *Neal* supported that the officer there had particular experience with suspected DUI cases. The Court also notes that a trained law enforcement officer, as the Officer in this case, may be able to notice suspicious activity that might go unnoticed by a normal citizen. *Neal*, 27 Va. App. at 237-38, 498 S.E.2d at 424.

In assessing reasonable suspicion under the totality of the circumstances, the Court of Appeals has indicated that the proper test to evaluate vehicular weaving is not based on a particular distance or number of sinusoidal paths. Rather, the analysis is whether the weaving in question constitutes an "isolated instance" of mild weaving; if so, it is insufficient to justify an investigatory stop. *Neal*, 27 Va. App. at 239, 498 S.E.2d at 425. In reaching this conclusion, the Court of Appeals relied in part on cases from other jurisdictions that held that weaving within a traffic lane is sufficient to justify an investigatory stop. *See id.* at 239-39, 498 S.E.2d at 425 (*citing, inter alia, State v. Malaney*, 871 S.W.2d 634 (Mo. App. 1994) (finding that an investigatory stop was reasonable where the officer observed a vehicle weaving within its lane three times over a distance of one mile)).

In *King*, there was an isolated instance of erratic driving, "a momentary drift across a lane divider between lanes traveling in the same direction." *King*, 1995 Va. App. lexis at *3-4. The court found that the defendant unnecessarily stopping at a yield sign was not erratic, but rather a "reasonable act of a cautious driver." *Id.* at *3. The *King* court, therefore, relied solely on the single drift across the lane divider to find a lack of reasonable, articulable suspicion. Similarly, in *Webb* the court characterized the single cycle of weaving "to be more in the nature of an *isolated instance* of mild weaving as opposed to constant weaving." *Id.* (emphasis added). This Court finds that, unlike in *King* and *Webb*, there is more than an isolated instance of Johnson's vehicle engaging in mild weaving within a traffic lane. As in *Neal*, here, "repeated weaving in one's own lane gave the officer reasonable and articulable suspicion to stop the vehicle and investigate further." *Neal*, 27 Va. App. at 239, 498 S.E.2d at 425. This Court, similarly to the court in *King* — finds that Johnson's "[having] his hands on the wheel and … staring straight ahead" when the Officer pulled alongside Johnson's vehicle constituted a reasonable act of a cautious driver and certainly was not "erratic."

Considering the totality of the circumstances in evaluating reasonable suspicion, as this Court must, the Officer relied upon more than just Johnson's vehicular movements, as discussed *infra*.

### 3. *Mistake of Fact*

In the present case, the Officer testified to more than just Johnson's vehicle weaving within its lane to justify the investigatory stop. The Officer also had the mistaken belief that Johnson had committed a traffic infraction.

(Tr. 7-9, 21-22.) The Officer's error was a mistake of fact and not a mistake of law; the Officer believed that Johnson had proceeded straight through a right-turn-only lane and, thereby, had committed a traffic infraction. (*Id.* at 7.) The Officer was not mistaken as to the illegality of going straight through a right-turn-only lane;[1] instead, he was mistaken as to a fact, *i.e.*, whether the lane in fact was a right-turn-only lane. The Court views the Officer's testimony, which was undisputed, as credible and believes that his perception regarding the traffic infraction was honest, but mistaken. Such an honest, but mistaken, belief of a traffic infraction arguably is enough on its own to justify an investigatory stop. *Barnette*, 23 Va. App. at 584, 478 S.E.2d at 708. This additional fact also distinguishes this case from *Webb*. *Webb* dealt only with "an isolated instance" of swerving within a traffic lane; it did not consider other facts in its reasonable, articulable suspicion analysis. *Webb*, 56 Va. Cir. at 420. For these reasons, this Court disagrees with Johnson that *Webb* is dispositive.

Considering the totality of the circumstances, the stopping officer's experience, the repeated instances of Johnson's vehicle weaving within its traffic lane and on top of a lane marker, and the Officer's perception that Johnson had committed a traffic infraction, the Court finds that the Commonwealth has satisfied its burden of proving that there was reasonable, articulable suspicion to justify the investigatory stop of Johnson. The Court, therefore, denies Johnson's Motion To Suppress.

---

[1] A driver's failure to obey a highway traffic control device constitutes a traffic infraction. Va. Code. Ann. § 46.1-830 (1950). Road markings qualify as a "traffic control device" for purposes of Va. Code § 46.1-830; *id.* § 46.2-100. The Officer, therefore, was not mistaken as to a matter of law when he believed that driving straight through a right-turn-only lane was a traffic infraction.