# CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

Chad Alan Dugas

November 23, 2015

Case No. (Criminal) 27833

BY JUDGE DOUGLAS L. FLEMING, JR.

This matter comes before the Court on the Defendant's Motion To Suppress. The Defendant moves the Court to enter an order suppressing all evidence gathered, statements made, and items seized by law enforcement personnel resulting from the traffic stop of Defendant's vehicle. The Motion To Suppress was heard on November 12, 2015. The Court took the motion under advisement. This memorandum opinion and order follows.

## Factual Background

On December 20, 2014, Leesburg Police Officer William Gage was patrolling in a marked police cruiser. Officer Gage testified that he has a total of approximately five years of experience with the Leesburg Police Department and a total of over fifteen years experience as a police officer, having worked as a Special Agent with the United States Secret Service for approximately ten years.

Officer Gage testified that he has completed the National Highway Transportation Safety Administration (NHTSA) DUI course, as well as the NHTSA advanced DUI course. He stated that he has made over fifty DUI arrests and, in 2001, was awarded a Mothers Against Drunk Driving (MADD) award resulting from his making over twenty DUI attests in Leesburg.

Officer Gage testified that, on December 20, 2014, at approximately 3:00 a.m., he observed a vehicle ("the vehicle") exit the Manor parking lot on Fort Evans Road at "a high rate of speed." Officer Gage had not paced the vehicle, nor obtained a radar or lidar speed reading for the vehicle, nor was he able to provide a specific estimate of the vehicle's speed. Rather, he stated that the vehicle appeared to him to be travelling "in excess of twenty-five miles per hour." Officer Gage testified that the posted speed limit on Fort Evans Road, as well as on virtually every public road in Leesburg, was twenty-five miles per hour.

The officer did not stop the vehicle in the area of Fort Evans Road nor charge the driver of the vehicle with speeding. Rather, Officer Gage followed the vehicle for some distance. The vehicle then crossed East Market Street and turned into the Best Western Motel and pulled into a parking space for a brief period of time. Officer Gage stated that the vehicle exited the Best Western Motel parking lot when Officer Gage's cruiser drove into the motel's parking lot. Officer Gage then testified that the vehicle travelled westbound on East Market Street, made a left turn onto Sycolin Road, and then made a right turn onto Gateway Drive.

After travelling a distance on Gateway Drive, the vehicle drove through an apartment complex and travelled the opposite direction on Gateway Drive until making a left turn onto Harrison Street. At this point, the officer stated that he had been following the vehicle for about a mile and a half. As the vehicle travelled on Harrison Street, Officer Gage testified that the vehicle "touched the yellow line" in the vicinity of Harrison and Shenandoah Streets. Officer Gage testified that there is a double yellow line in this area of Harrison Street and that vehicles are parked on both sides of Harrison Street every night he works. The vehicle then made a left turn onto Catoctin Circle.

Officer Gage testified that the vehicle obeyed the traffic control device at the East Market / Sycolin Road intersection, travelled at the posted speed limit on Gateway Drive, properly negotiated the cul-de-sac on Gateway Drive, obeyed the speed limit on Harrison Street, stopped at the four way stop sign at the Harrison Street / Shenandoah Street intersection, observed the flashing red light at the Harrison Street / Catoctin Street intersection, and obeyed the speed limit on Catoctin Circle.

As the vehicle travelled on Catoctin Circle Officer Gage testified that he saw "a second touch of the yellow line," At this point, Catoctin Circle is five lanes: two lanes in either direction with double yellow lines and a fifth center lane that is used as a left turn lane for vehicles travelling in either direction. Immediately thereafter, Officer Gage activated his emergency lights and stopped the vehicle. Officer Gage said that there was no abrupt reaction from the vehicle when the emergency lights were activated. Officer Gage estimated he had been following the vehicle for two and a half miles when he stopped the vehicle. Specifically, Officer Gage confirmed that,

other than the two line touches, the vehicle was not weaving within its lane, was not travelling slower than normal, and was obeying traffic laws.

Officer Gage testified that, when he first observed the vehicle, it was in an area of town that had recently experienced a fairly large number of larcenies. The officer confirmed, however, that there was no information to link the Defendant's vehicle to any crimes in the Town of Leesburg and that, other than the time of night, any suspicion he may have had regarding the vehicle's presence in that particular area of the town would be merely a "hunch."

Upon stopping the vehicle, Officer Gage identified the Defendant, Chad Alan Dugas, as the vehicle's driver. As a result of information obtained after the stop Mr. Dugas was arrested and charged with criminal offenses.

The Court found Officer Gage to be a credible witness.

*Analysis*

A law enforcement officer is entitled to briefly detain an individual and ask investigatory questions if he has a "reasonable articulable suspicion" of criminal activity. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Such suspicion can arise out of a routine traffic stop, and the reasonableness of the stop is evaluated under a totality of the circumstances standard. *Bass v. Commonwealth,* 259 Va. 470, 525 S.E.2d 921, 924 (2000).

There is no question but that Officer Gage's articulated reason for stopping the Defendant's vehicle was because of the time of night (3:00 a.m.) and the two line touches. Officer Gage testified that, given the hour of the night, the line touching was, in his opinion, "consistent with possibly an impaired driver." Officer Gage readily acknowledged that his other testimony, such as the vehicle previously being in an area of town that had experienced larcenies, and the route the vehicle took, was merely a hunch.

Virginia courts have provided some guidance on swerving and "line touch" cases. In *Neal v. Commonwealth,* 27 Va. App. 233, 498 S.E.2d 422 (1998), the Court of Appeals of Virginia acknowledged the general principle that "weaving within a single traffic lane is an articulable fact which may give rise to a reasonable suspicion of illegal activity." 27 Va. App. at 239. In *Neal,* the Court correctly observed that the test is one of reasonableness under "the totality of the circumstances." Applying that test to the facts before it, the Court in *Neal* noted that "the officer observed the appellant's vehicle for twenty-five seconds weaving repeatedly within its lane between five and ten times over a distance of a half-mile." Based on the articulated behavior, the Virginia Court of Appeals held that the officer had reasonable and articulable suspicion to stop the vehicle. *See, e.g., Hoambrecker v. City of Lynchburg,* 13 Va. App. 511, 512, 412 S.E.2d 729 (1992) (defendant stopped because he was "weaving badly"); *Brooks v. Newport News,* 224 Va. 311, 313, 295 S.E.2d 801 (1982) (defendant stopped because he was "weaving back and forth across the broken white lines between lanes").

*King v. Commonwealth,* 95 Va. UNP 1219934, 1995 Va. App. LEXIS 8 (Va. App. 1995), an unpublished opinion of the Virginia Court of Appeals that has no precedential effect, is nonetheless helpful in analyzing a line swerving or "drifting" situation. The officer in *King* stopped a driver he suspected was driving under the influence of intoxicants. The officer stated that the driver paused for two seconds at a yield sign although there was no observable traffic, and then "drift[ed] over a few feet into the adjoining lane and then return[ed] to the curb lane." In reversing and dismissing the driver's conviction, the Court of Appeals stated "[w]e hold that the two actions observed by the deputy were insufficient to give rise to a reasonable suspicion of criminal activity even when observed by a trained law enforcement officer." *Id.*

The Circuit Court of the City of Danville had the opportunity to consider a motion to suppress involving a line touching case. In *Commonwealth v. Webb,* 56 Va. Cir. 419 (2001), the driving behavior relied upon by the arresting officer to justify an investigatory stop involved weaving within a single lane. Specifically, "the vehicle's left wheels touched, but did not cross the middle lane divider of a divided highway. The vehicle's right wheels then touched or ran along, but did not cross, the outside line marking the outside of the lane. Then, the vehicle drifted back to the left such that the left wheels again touched the middle lane divider," The weave described above occurred over a distance of about 0.3 to 0.5 mile. The Court observed that the officer was an experienced patrolman.

The Court in *Webb* found that the defendant's vehicle "was not observed to be making erratic movements of the type observed by the arresting officer in *Neal.* . . ." Noting that the vehicle in *Neal* was constantly moving from side to side in its lane, the Court in *Webb* in granting the motion to suppress, stated that "Defendant's movements appear to be more in the nature of an isolated instance of mild weaving as opposed to constant weaving." 56 Va. Cir. at 420.

It is clear that Virginia courts, in evaluating the reasonableness of a traffic stop based on a totality of the evidence standard, have drawn a distinction between mild weaving, typically within one's own lane, and constant, repeated, or "bad" weaving, often occurring over a short distance or within a close period of time. The facts in the instant case are distinguishable from those in *Neal* and instead fit most closely with the facts in *Webb.*

Mr. Dugas' vehicle "touched," but did not cross, the yellow line twice over a distance of approximately one mile. In using the word "touch" the officer did not (and perhaps was unable to) describe the time interval that the vehicle touched the line, nor the degree to which it touched the line. Further, both areas where the touching occurred were unusual: the first area was on a two lane road, Harrison Street, with cars parked on either side, the second on a five lane road, Catoctin Circle, with the middle lane open to traffic travelling in both directions. Over the course of approximately

two and a half miles, Officer Gage testified that Mr. Dugas observed all traffic laws. The two line touches, coupled with the lateness of the hour, was the articulated reason for stopping Mr. Dugas. Driving late at night is not a sufficient reason to stop a vehicle unless there is additional evidence to create reasonable, articulable suspicion for the stop under a totality of the circumstances test. Mr. Dugas' vehicle did not weave repeatedly over a short distance, did not weave outside its lane of travel, was not constantly moving from side to side, was not even occasionally moving from side to side, and did not make erratic movements over a close period of time. Mr. Dugas' driving behavior appeared to involve two isolated instances of mild drifting toward the left, never outside the travel lane.

The Commonwealth requested the Court, in making its ruling, to consider Officer Gage's testimony that the Defendant's vehicle was travelling in excess of 25 mph when Officer Gage first noticed the vehicle. The Court considered this testimony but gives it minimal weight for the following reasons: (a) no speed was articulated, nor was a particular speed measured or estimated; (b) the officer never stopped Mr. Dugas' vehicle for allegedly exceeding the speed limit; (c) after the officer began following Mr. Dugas' vehicle, testimony established that Mr. Dugas obeyed the posted speed limits; and (d) the officer's testimony made it clear that the time of night and the two line touches formed the basis for the officer's suspicion that Mr. Dugas was driving impaired.

Applying the applicable standard and based on a totality of the circumstances, the Court does not believe that the isolated acts of slight drifting over a distance of approximately one mile were sufficient to justify the seizure of Mr. Dugas and his vehicle. Accordingly, the motion to suppress is granted, and the Court suppresses all evidence, including statements made by the accused and items seized, resulting from the seizure of Mr. Dugas and his vehicle. It is so ordered.