PRESENT: Hassell, C.J., Keenan,[1] Koontz, Lemons, Goodwyn, and
Millette, JJ., and Lacy, S.J.

MICHAEL EUGENE JONES

v.    Record No. 091539

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE LEROY F. MILLETTE, JR.
April 15, 2010

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether a lawful traffic stop
transformed into an unlawful seizure in violation of the Fourth
Amendment when police seized the defendant's wallet during a pat
down, thereby rendering the defendant's consent to search his
vehicle invalid.

BACKGROUND

We will state the facts in the light most favorable to the
Commonwealth, the prevailing party below.  Jones v.
Commonwealth, 279 Va. 52, 55, 688 S.E.2d 269, 270 (2010).
Detectives I. McNett and N. L. Deluca of the Portsmouth Police
Department were patrolling in a "high crime/high drug area" in
Portsmouth when they saw a vehicle, with a driver and a front-
seat passenger, parked in a public roadway impeding traffic.
The detectives observed a third individual leaning into the
vehicle.  Detective McNett, who testified that he had observed
over one hundred drug transactions and had been involved in over

_____

[1] Justice Keenan participated in the hearing and decision of
this case prior to her retirement from the Court on March 12,

five hundred drug arrests during his career, saw what appeared to be a "hand-to-hand transaction" between the individual leaning into the vehicle and the driver, who the detectives eventually determined to be Michael Eugene Jones.

Believing they had witnessed a narcotics transaction, the detectives stopped Jones' vehicle. Detective McNett approached the driver's side of the vehicle and asked Jones for his driver's license and vehicle registration while Detective Deluca approached and spoke with the front-seat passenger. Jones did not produce his driver's license or vehicle registration and was "visibly shaking and breathing hard." Detective McNett asked Jones to step out of the vehicle, and at that point, Detective Deluca began questioning Jones while Detective McNett questioned the passenger. The passenger provided Detective McNett with his identification. After determining that the passenger had no warrants, Detective McNett told him he was free to leave, and the passenger left.

When Detective Deluca asked Jones whether he had any information or identification on him, Jones provided Detective Deluca with a purported name and social security number.[2] The detectives provided a dispatcher with the name and social

---

2010.
[2] The detectives did not have the ability to verify that the name and social security number Jones' provided them were his real name and social security number.

security number Jones gave them to check for a valid driver's license and possible warrants. While the information was being confirmed, Officer Deluca conducted a pat down of Jones for his safety based upon Jones' nervous behavior, the nature of the area, and his suspicion that Jones had participated in a narcotics transaction. During the pat down, Detective Deluca felt what he believed was a wallet. Detective Deluca testified that this "shocked" him because of Jones' statement that he did not have any information or identification with him. Jones told Detective Deluca that the wallet belonged to his cousin. Detective Deluca "asked to look at the wallet, pulled it out, [and] found a blank check . . . with the name . . . Michael Eugene Jones on it." [3]

The name Michael Eugene Jones was not the same name Jones had given the detectives. Less than a minute later, the police dispatcher notified the detectives that the name Jones provided for the driver's license and warrant check was "good." As he continued to tell Detective Deluca that the wallet belonged to his cousin, Jones remained extremely nervous, shaking, and breathing more heavily, and started looking around in different directions rather than talking to the detective. Detective Deluca placed Jones in "investigative detention," handcuffed

---

[3] Detective Deluca did not testify that Jones responded in any way to his request to look at the wallet.

him, and placed him in the passenger side of the police vehicle. Because Detective Deluca was still trying to determine Jones' true identity, he asked the dispatcher to have a uniformed officer come to the scene with a computer capable of verifying Jones' identity with a picture.

About 10 minutes after the initial stop, as the detectives were still waiting for the uniformed officer and Jones was handcuffed in the police vehicle, Detective McNett asked Jones whether he could search his vehicle. Jones replied, "sure, no problem." A search of Jones' vehicle yielded two firearms and a substance that was subsequently identified as heroin.

Jones was indicted for possession of a firearm by a convicted felon, possession with intent to distribute heroin, and possession of a firearm while possessing with intent to distribute heroin. Jones filed a motion to suppress all evidence resulting from what he contended was an unlawful seizure. The circuit court overruled Jones' motion to suppress. After a bench trial, Jones was convicted of the offenses charged in the indictment.

Jones appealed his convictions to the Court of Appeals, which denied his petition by order, finding that the initial detention had not ended and that Jones' consent to search was valid. Jones v. Commonwealth, Record No. 2050-08-1 (March 18, 2009). A three-judge panel affirmed the judgment denying Jones'

4

petition.  Jones v. Commonwealth, Record No. 2050-08-1 (July 2, 2009).  We awarded Jones this appeal.

DISCUSSION

The standard of review in this case is well settled.

> In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.  The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence.  We will review the trial court's application of the law de novo.

Whitehead v. Commonwealth, 278 Va. 300, 306-07, 683 S.E.2d 299, 301 (2009) (citations omitted).

On appeal to this Court, Jones assigns error to the Court of Appeals' approval of the circuit court's denial of his motion to suppress.  Jones argues that the detectives exceeded the scope of the pat down for weapons by removing his wallet and examining the contents without probable cause or his consent. Jones notes that Detective Deluca knew the object was a wallet, and thus did not have probable cause to seize the wallet because he knew it was neither a weapon nor contraband.

Jones also asserts he was illegally seized when his detention continued after the police dispatcher notified the detectives that the identification information Jones provided was "good," because Detective Deluca testified that he was

5

detaining Jones at that point based on the conflicting identification information he had obtained from the illegal seizure of Jones' wallet. Jones contends that if Detective Deluca had not illegally seized the wallet, Jones would have been released upon confirmation from the dispatcher.

Jones also argues that any consent he gave the detectives to search his vehicle was invalid because it was the result of his illegal detention after he should have been released upon the report from the dispatcher. Jones asserts that he was seized when the detectives placed him in "investigative detention," handcuffed him, and placed him in the police vehicle. Jones contends that he was illegally seized by his continued detention at the time Detective McNett asked for his consent to search, and that the consent was not sufficiently attenuated from the illegal seizure to purge the taint of that illegal seizure. According to Jones, the evidence he objected to in his motion to suppress is "fruit of the poisonous tree" that would not have been found by the detectives but for the exploitation of the "primary illegality," the unconstitutional continued detention. Wong Sun v. United States, 371 U.S. 471, 487-88 (1963). Jones argues that the recovery of the gun, drugs, and his statements cannot be said to be "purged of the primary taint." Id.

The Commonwealth responds that Jones' detention did not amount to an unlawful seizure because the detectives had reasonable suspicion to believe that Jones was involved in criminal activity throughout the entire encounter. The Commonwealth argues that Detective Deluca's subjective reason for the continued detention, to verify the conflicting identification information found on the blank check, is irrelevant for Fourth Amendment analysis because the circumstances, viewed objectively, justified Jones' detention.

Assuming that Detective Deluca did exceed the scope of the pat down and violated the Fourth Amendment when he seized Jones' wallet, the Commonwealth argues that Jones' consent to search the vehicle was not obtained as a result of the illegal seizure. According to the Commonwealth, the consent was valid because the continued detention was lawful and the consent was not obtained by an exploitation of any illegality.

### Seizure of Jones' Wallet

It is well established that during an investigative stop, a police officer may conduct a limited pat down for weapons if the officer reasonably believes that the criminal suspect may be armed and dangerous. Terry v. Ohio, 392 U.S. 1, 27 (1968). We recently stated:

> An officer who conducts a Terry pat-down search is justified in removing an item from a subject's pocket if the officer reasonably believes that the

7

> object might be a weapon.  Additionally, the removal of an item from a subject's pocket is also justified if the officer can identify the object as suspicious under the "plain feel" variation of the plain view doctrine.  However, an item may not be retrieved under the plain view doctrine unless it is "immediately apparent" to the officer that the item is evidence of a crime.

Grandison v. Commonwealth, 274 Va. 316, 319-20, 645 S.E.2d 298, 300 (2007) (citations omitted).

In this case, Detective Deluca was not justified in seizing Jones' wallet because Detective Deluca testified that he believed the item he seized was a wallet and not a weapon or contraband.  Based upon Detective Deluca's testimony, we conclude that Detective Deluca did not have probable cause to retrieve the wallet from Jones' possession.  Additionally, the record shows that Detective Deluca asked Jones whether he could "look at the wallet," but the record does not show that Jones responded verbally or in any other way to this request.  Viewing the evidence in the light most favorable to the Commonwealth, we cannot conclude that Jones consented to the seizure of his wallet.  Therefore, the seizure of Jones' wallet by the detectives was in violation of his Fourth Amendment rights.

However, the dispositive issue in this case is not whether the detectives' seizure of Jones' wallet was an illegal seizure.  Rather, the dispositive issue is whether the unlawful seizure of the wallet transformed a concededly valid investigatory stop

8

into an illegal detention by unlawfully extending that detention.

Legality of Jones' Detention

A police officer may conduct a brief investigatory stop when the officer, in light of his training and experience, has reasonable, articulable suspicion that criminal activity is afoot. Terry, 392 U.S. at 21, 27, 30. To comport with the protections afforded by the Fourth Amendment, a traffic stop must be justified by an objective manifestation that the person stopped is engaged, or is about to be engaged, in criminal activity. United States v. Cortez, 449 U.S. 411, 417 (1981). The court must consider the totality of the circumstances in determining whether the police officer had a particularized and objective basis for suspecting that the person stopped may be involved in criminal activity. Id. at 417-18. "[A]n officer's subjective characterization of observed conduct is not relevant to a court's analysis concerning whether there is a reasonable suspicion because the Court's review of whether there was reasonable suspicion involves application of an objective rather than a subjective standard." Harris v. Commonwealth, 276 Va. 689, 697, 668 S.E.2d 141, 146 (2008).

The Supreme Court recently stated:

> A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers

9

ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave.

Arizona v. Johnson, 555 U.S. ___, ___, 129 S.Ct. 781, 788 (2009).

Jones does not challenge the legality of the initial stop. Rather, Jones argues that his seizure became illegal when the detectives were notified that the information Jones provided them concerning his name and social security number was "good." Jones asserts that as soon as a dispatcher confirmed that the name Jones provided was a licensed driver without any outstanding warrants, the detectives no longer had reasonable, articulable suspicion justifying a continuation of Jones' detention. We disagree with Jones.

When the detectives first observed Jones' vehicle, it was parked in a public street impeding the flow of traffic. This gave the detectives reasonable suspicion to effectuate a traffic stop because impeding the flow of traffic on a highway is prohibited by Portsmouth City Ordinance § 22-561(a).[4] The detectives were justified in stopping Jones' vehicle and conducting a brief, investigatory stop regarding the traffic

---

[4] The ordinance states, in pertinent part, that "[n]o vehicle shall be stopped in such a manner as to impede or render dangerous the use of the highway by others, except in the case

offense as well as the apparent hand-to-hand transaction in a high crime, high drug area.

Even though the information Jones provided the detectives was confirmed to be that of a valid driver, that confirmation did not prove that Jones was, in fact, the person so identified. Without a valid form of identification, it was impossible for the detectives to determine whether Jones was who he said he was. It was not unreasonable for the detectives to continue to detain Jones for a reasonable period of time, awaiting a uniformed officer with a computer, in order to access a photograph of the person whose name Jones had provided. Determining Jones' true identity was reasonably necessary to the traffic stop, both in investigating the apparent traffic offense and the suspected drug transaction. Thus, the temporary continued seizure of Jones did not amount to an unlawful detention because determining Jones' true identity was within the scope of the unchallenged investigatory stop and was not unreasonable.

### CONCLUSION

Although the seizure of Jones' wallet was unlawful, Jones' detention remained lawful because at the time of the seizure the detectives were still trying to ascertain Jones' identity, which

of an emergency as the result of an accident or mechanical breakdown . . . ."

11

was within the scope of the traffic stop.  Because Jones was lawfully detained at the time he consented to the search of his vehicle, his consent was not the result of an illegal detention and remained valid.

Therefore, we hold that Jones failed to show that the circuit court committed reversible error in denying his motion to suppress.  Accordingly, we will affirm the judgment of the Court of Appeals.

<u>Affirmed.</u>