UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Huff, Judges Decker and AtLee
Argued at Norfolk, Virginia


DONALD BRIAN SLENTZ

MEMORANDUM OPINION* BY
v.        Record No. 2102-16-1          JUDGE MARLA GRAFF DECKER
DECEMBER 12, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
W. Revell Lewis, III, Judge

Chad G. Dorsk (Dorsk Law Office, PLC, on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Donald Slentz appeals his conviction for driving under the influence of alcohol, in violation

of Code § 18.2-266.  He argues that the circuit court erred by denying his motion to suppress

evidence.  He contends that law enforcement did not have a reasonable articulable suspicion of

criminal activity to support a traffic stop of his vehicle.  He concludes that consequently the police

violated his rights under the Fourth Amendment of the Constitution of the United States and the

circuit court should have suppressed the evidence.  We hold that the court did not err in denying the

motion to suppress.  Accordingly, we affirm the conviction.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND[1]

At about 12:30 a.m. on August 7, 2016, Virginia State Trooper Louis Milyko saw the appellant driving an older model Ford Bronco with "a raised suspension." The trooper was in his police car directly behind the vehicle. Milyko watched the appellant's vehicle twice cross the white fog line of the roadway and drive on the grass shoulder. Milyko immediately activated his emergency lights, and he stopped the Bronco for "failing to maintain the lane of travel." "[A]s soon" as the trooper activated his blue lights, his equipment "start[ed] recording audio and video, but it had been already recording a minute prior to that," capturing the appellant's actions.

Virginia State Trooper Daniel Wallace, who was driving in his police car behind Trooper Milyko, knew that there was a vehicle in front of Milyko. Trooper Wallace could not see the vehicle but did see a large "area of dust" to the right side of the road. Wallace did not see Milyko's police car leave the roadway and knew that Milyko's tires did not create the dust.

The video recorded by the dashboard camera in Milyko's police car was played at trial. Trooper Milyko narrated as the video was played and answered questions associated with the recording of the events leading to the stop. The video recorded Milyko's car approach the appellant's vehicle from behind on a two-lane road. It shows the appellant's vehicle veer onto and partially over the fog line within five seconds before Milyko activated his emergency lights. The shoulder of the road appears to be a grassy shoulder directly to the right side of the fog line.

The appellant filed a motion to suppress the evidence, contending that the trooper had no reasonable basis for the stop. He argued that the video recording from Milyko's police car camera showed that his vehicle merely touched the white line and did not cross it.

---

[1] In ruling on the propriety of a circuit court's decision on a motion to suppress, the appellate court views the evidence in the light most favorable to the prevailing party below, in this case the Commonwealth. E.g., Raab v. Commonwealth, 50 Va. App. 577, 579, 652 S.E.2d 144, 146 (2007) (*en banc*).

The circuit court, after closely watching the video and listening to the narration by the state trooper, determined that Milyko had reasonable suspicion to initiate the traffic stop. The court made a factual determination and specifically noted that the video supported the trooper's account that "the vehicle appeared to go off the road momentarily" and "instantly the trooper turned the blue lights on." The court noted:

> The question is whether or not what the trooper observed created a situation where there was a reasonable suspicion to initiate the traffic stop. And I believe that there was. I believe that seeing that vehicle cross that line that the trooper immediately activated his emergency equipment. And I recognize that this is a close case, but it's 12:35 a.m. and there are any number of reasons that something could be going on.

The court stated that reasons to investigate after the trooper saw the appellant's vehicle cross the fog line included the possibility that the driver was having a health issue or falling asleep. Based on its findings, the court denied the motion to suppress.

The appellant entered a conditional guilty plea to driving under the influence of alcohol in violation of Code § 18.2-266, preserving his right to appeal the denial of his motion to suppress.[2] The court accepted his plea and sentenced him to thirty days in jail, with the entire time suspended.

## II. ANALYSIS

The appellant argues that the circuit court erred in denying his motion to suppress the evidence. He contends that the state trooper did not have a reasonable, articulable suspicion that he was engaged in criminal activity or had committed a traffic infraction at the time that he was stopped. The appellant's challenge consists of two arguments. First, he suggests that the trooper's testimony was contradicted by the video viewed by the circuit court and thus did not

---

[2] Code § 18.2-266 prohibits driving under the influence of alcohol or drugs, including driving while intoxicated with a blood alcohol level of .08% or more.

provide a factual basis to support the stop.  Second, the appellant contends that even if the circuit court was not plainly wrong in accepting the trooper's testimony as credible, the circumstances as a whole did not provide a reasonable, articulable suspicion to conduct the traffic stop as a matter of law.

On appeal of the denial of a motion to suppress evidence, the appellant has the burden to show that the circuit court's ruling constituted reversible error.  Mason v. Commonwealth, 291 Va. 362, 367, 786 S.E.2d 148, 151 (2016).  The ultimate determinations of whether reasonable suspicion exists and "whether a person has been seized in violation of the Fourth Amendment" involve "questions of both law and fact and are reviewed *de novo* on appeal."  Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000).  The appellate court must "independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment."  McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 515 (2008).  In doing so, however, the Court is "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence."  Jones v. Commonwealth, 279 Va. 665, 670, 691 S.E.2d 801, 803 (2010) (quoting Whitehead v. Commonwealth, 278 Va. 300, 306, 683 S.E.2d 299, 301 (2009)).  In addition, we "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  Reittinger, 260 Va. at 236, 532 S.E.2d at 27 (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)).

First, we address the appellant's factual challenge.  He argues that the circuit court's factual finding that he crossed the fog line was plainly wrong.  The appellant recognizes that Trooper Milyko's testimony supports the court's finding but suggests that the video contradicts the trooper's testimony, contending that it does not show that he crossed the fog line and drove on the shoulder of the roadway.  He relies exclusively on the video for the proposition that

"[i]ncidentally, his right tires touched the far right 'fog line[]' but that his vehicle did not appear to cross over the line onto the grassy shoulder." Contrary to the appellant's assertions, the record, viewed in light of the applicable law, does not support this challenge.

Trooper Milyko, a trained police officer, unequivocally testified that while driving behind the appellant's vehicle he saw it leave "the travel portion of the highway," cross the fog line, and drive on the grassy shoulder of the roadway. Specifically, the trooper saw the vehicle cross the fog line twice before he made the stop. See Code § 46.2-804(2).[3] In addition, Trooper Milyko's testimony was supported by that of Trooper Wallace, who was traveling behind Milyko. Wallace knew that a vehicle was in front of Milyko and although he could not actually see that vehicle, he did see a large cloud of dust on the right side of the roadway in the area of the ditch, which was not created by Milyko's car.[4] This testimony is consistent with Milyko's observations and reinforces the conclusion that the appellant's vehicle went off the roadway onto the shoulder prior to the stop.

The appellant's conclusion that he did not cross over the fog line onto the grassy shoulder is not supported by the record, including the video itself. The video was viewed by the circuit court and narrated by Trooper Milyko in order to provide context. Contrary to the appellant's argument, it does not refute the testimony of the witnesses. The video is necessarily limited by its location in the vehicle, the quality of the camera, the distance between it and the Bronco, and

---

[3] Code § 46.2-804(2) requires a vehicle to be driven "as nearly as is practicable entirely within a single lane." Code § 46.2-100 defines "lane" as "that portion of the roadway designed or designated to accommodate the forward movement of a single line of vehicles." A "[r]oadway" is "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the shoulder." Id. "Highway" is defined, in pertinent part, as "the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel." Id.

[4] Based on the testimony and the features of the roadway, it is a reasonable inference that the dust was caused by the appellant's vehicle leaving the paved lane on the road. See Reittinger, 260 Va. at 236, 532 S.E.2d at 27.

the fact that it recorded in the darkness with minimal light source. Nevertheless, subject to its limitations, the video shows the Bronco drift off the roadway. The recording shows that the appellant veered to the right, indicating that the Bronco went off the roadway, necessarily crossing the fog line, even if only for a short time.

Notably, due to the distance and darkness it is difficult for the viewer to clearly see all of the detailed actions of the appellant's Bronco. See generally State v. Brito, 154 A.3d 535, 549 (Conn. App. Ct. 2017) (holding that due to the poor image quality of the video recording, the court could not conclude that it contradicted the police officer's testimony). Trooper Milyko, on the other hand, was present on that roadway and in a much better position to view the appellant's actions in front of him. See McCary v. Commonwealth, 36 Va. App. 27, 41, 548 S.E.2d 239, 246 (2001) (noting that the factual findings to which we defer include the circuit court's assessment of witness credibility). He witnessed the event from his location in the police car and testified very clearly as to what he saw—namely, that the appellant's Bronco crossed the white fog line on the roadway twice and drove on the grass shoulder.

Viewing the evidence in the light most favorable to the Commonwealth, the circuit court's factual finding that the appellant crossed the fog line was not plainly wrong and had ample evidence to support it.[5]

The appellant's second challenge relates to the circuit court's legal conclusion that the circumstances supported the traffic stop. The appellant contends that even if he crossed the fog line briefly, the traffic stop violated his Fourth Amendment rights because Trooper Milyko did not have a reasonable, articulable suspicion of criminal activity.

---

[5] In light of this conclusion, we do not address whether the stop would have been lawful assuming that the vehicle drove *on the line* rather than over it. Code § 46.2-804(2). See generally United States v. Williams, 945 F. Supp. 2d 665, 672 (E.D. Va. 2013) ("[A] driver who drives his vehicle on the boundary lines violates § 46.2-804, regardless of whether the driver actually crosses over the boundary lines.").

Well-established legal principles guide our analysis. The Fourth Amendment protects people from unreasonable searches and seizures. E.g., Sidney v. Commonwealth, 280 Va. 517, 522, 702 S.E.2d 124, 127 (2010). This "protection extends to brief investigatory stops 'that fall short of traditional arrest.'" Moore v. Commonwealth, 276 Va. 747, 757, 668 S.E.2d 150, 155 (2008) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). The amendment's requirements are met "if the officer's action in making an investigatory stop is supported by 'reasonable suspicion to believe that criminal activity "may be afoot."'" Id. (quoting Arvizu, 534 U.S. at 273); see also Mason, 291 Va. at 367, 786 S.E.2d at 151. "[I]f there are articulable facts supporting a reasonable suspicion" of criminal activity, "that person may be stopped . . . briefly while attempting to obtain additional information." Sidney, 280 Va. at 524, 702 S.E.2d at 128-29 (quoting Hayes v. Florida, 470 U.S. 811, 816 (1985)). The purpose of an investigatory stop, including the stop of a vehicle, is "to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion." Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001).

"There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists . . . ." Hoye v. Commonwealth, 18 Va. App. 132, 134-35, 442 S.E.2d 404, 406 (1994). It "is more than an unparticularized suspicion or 'hunch.'" Sidney, 280 Va. at 523, 702 S.E.2d at 128 (quoting Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000)). However, "[t]he likelihood of criminality 'need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard' applicable in other contexts." Raab v. Commonwealth, 50 Va. App. 577, 581, 652 S.E.2d 144, 146 (2007) (en banc) (quoting Arvizu, 534 U.S. at 274).

On appellate review, we must consider "the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal

wrongdoing." Mason, 291 Va. at 368, 786 S.E.2d at 151 (quoting Arvizu, 534 U.S. at 273). An officer's subjective view or intention is irrelevant. See, e.g., Whren v. United States, 517 U.S. 806, 813 (1996); Robinson v. Commonwealth, 273 Va. 26, 37, 639 S.E.2d 217, 223 (2007) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). In conducting this analysis, we are mindful that an officer is permitted to view the circumstances confronting him "in light of his training and experience." Jones, 279 Va. at 673, 691 S.E.2d at 805. "[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer." Lovelace v. Commonwealth, 37 Va. App. 120, 124-25, 554 S.E.2d 688, 690 (2001) (alterations in original) (quoting Freeman v. Commonwealth, 20 Va. App. 658, 661, 460 S.E.2d 261, 262 (1995)). "The test is . . . whether the facts and circumstances apparent to [the officer] at the time of the stop were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law was occurring or was about to occur." Mason, 291 Va. at 368, 786 S.E.2d at 151; see also Ornelas, 517 U.S. at 696. Further, "[t]he possibility of an innocent explanation for the suspicious conduct does not necessarily forbid an officer from making a brief, investigatory stop" to confirm or dispel his suspicion. Raab, 50 Va. App. at 581, 652 S.E.2d at 146.

The Commonwealth contends that Trooper Milyko had a reasonable basis to suspect the appellant of violating Code § 46.2-804(2). That code section provides that a "vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has ascertained that such movement can be made safely." Code § 46.2-804(2).

Based on the record, it was entirely reasonable for Trooper Milyoko to believe that the appellant violated Code § 46.2-804(2) by weaving over the fog line and onto the shoulder of the road in his Bronco, even if the actions were brief. See, e.g., Mason, 291 Va. at 367, 786 S.E.2d at 151. The test is reasonable suspicion, not probable cause or proof beyond a reasonable doubt.

Milyko saw the appellant drive his vehicle twice onto and over the fog line in the early morning hours, when road conditions were dark and visibility limited. Based on a possible violation of Code § 46.2-804, it was objectively reasonable for the trooper to stop the appellant's vehicle. The appellant may very well have had an explanation for his actions or could have provided a basis for the trooper to conclude that it was not "practicable" to stay within the lane of travel when the Bronco briefly crossed the fog line onto the shoulder. However, such explanations do not negate objective reasonable suspicion and are precisely what a trooper assesses when he confirms or dispels his suspicion of a violation once he stops a vehicle. See Raab, 50 Va. App. at 581, 652 S.E.2d at 146.

The appellant's reliance on Neal v. Commonwealth, 27 Va. App. 233, 498 S.E.2d 422 (1998), is misplaced. In Neal, a state trooper observed the defendant's "vehicle for twenty-five seconds weaving repeatedly within its lane between five and ten times over a distance of a half-mile." Id. at 239, 498 S.E.2d at 425. The Court held that "weaving within a single traffic lane is an articulable fact which may give rise to a reasonable suspicion of illegal activity." Id.; see also United States v. Kellam, 568 F.3d 125, 136 (4th Cir. 2009) (holding that an officer's stop of the defendant's vehicle after it "had crossed the double center line" in "violation" of Code § 46.2-804 was constitutional). Although the Court stated that "[a]n isolated instance of mild weaving within a lane is not sufficiently erratic to justify an investigatory stop," the denial of the motion to suppress was upheld based on the totality of the circumstances. Neal, 27 Va. App. at 239, 498 S.E.2d at 425.

In Neal, the trooper suspected that the defendant was "impaired," and the observed actions involved weaving within a lane. Id. Here, the trooper saw the appellant's Bronco leave the lane and cross over the fog line and onto the grassy shoulder. The suspected offense involved a clearly defined traffic offense, leaving a lane of travel in violation of Code

§ 46.2-804(2), rather than driving under the influence of alcohol. The trooper's observations, supported by the testimony of a second witness and a video recording, provided a reasonable suspicion of a traffic offense and supported the stop of the appellant's vehicle.

The appellant has not met his burden of showing that the circuit court committed reversible error. On appeal, we are bound by the circuit court's factual determinations unless plainly wrong, and we are required to view the evidence in the light most favorable to the Commonwealth. Jones, 279 Va. at 670, 691 S.E.2d at 803. "[T]he facts and circumstances apparent" to Milyko "were such as to create in the mind of a reasonable officer in the same position" a reasonable suspicion that the appellant had left his lane in violation of Code § 46.2-804(2).[6] See Mason, 291 Va. at 368, 786 S.E.2d at 151. For these reasons, the traffic stop did not violate the appellant's Fourth Amendment rights.

### III. CONCLUSION

The circuit court's conclusion that the trooper had a reasonable, articulable suspicion that the appellant committed a traffic offense is supported by the record. The court did not err in denying the motion to suppress evidence. Consequently, we affirm his conviction for driving under the influence of alcohol.

Affirmed.

---

[6] In light of this conclusion, we do not address the Commonwealth's argument that the circumstances established probable cause to arrest the appellant. See, e.g., McGhee v. Commonwealth, 280 Va. 620, 624, 701 S.E.2d 58, 60 (2010) (explaining the probable cause standard). Likewise, we do not address other possible bases for the stop. See generally Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (providing that an appellate court can affirm a judgment for any reason supported by the record).