# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chaney, Raphael and Callins
Argued at Richmond, Virginia


REVA NICOLE ENGLISH

v.        Record No. 0470-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE STUART A. RAPHAEL
FEBRUARY 21, 2023


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

Andrew J. Cornick (Andrew J. Cornick, LLC, on brief), for
appellant.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Appellant Reva Nicole English appeals her conviction following a jury trial for assault

and battery on a law-enforcement officer in violation of Code § 18.2-57.  She claims that her

arrest was unlawful and argues that the common law permitted her to use reasonable force to

resist.  The trial court rejected that argument, concluding that English had only been detained,

not arrested.  Applying *Commonwealth v. Hill*, 264 Va. 541 (2002), the court concluded that the

common-law privilege to use reasonable force to resist an unlawful arrest did not apply to her

detention.  We affirm on different grounds.  Assuming without deciding that English was

arrested, we conclude that her arrest was not unlawful because it was supported by probable

cause.  Thus, she did not have the right to resist a lawful arrest.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

Shortly before 9:00 p.m. on January 12, 2019, Bonita Hernandez called 911 to report a domestic assault. She said that English had used a bottle to hit her brother, Randall Branch, and that, to defend Branch, Hernandez had struck English with a flashlight. Hernandez also said that English was intoxicated. Spotsylvania County Sheriff's Deputy Kenneth Camp was dispatched to Hernandez's residence to investigate.[2] The dispatcher relayed Hernandez's report and further informed Camp of English's criminal record, which included multiple convictions for crimes of violence. Using DMV records, the dispatcher also provided English's "[h]eight, weight, skin color, [and] eye color."

At 9:07 p.m., Deputy Camp found English walking along the road, about a tenth of a mile from the residence. Snow had fallen that night, the temperature was below freezing, and English wore only a light hoodie, pants, and a shirt. She appeared to have been in a fight. She held a paper towel to her eyebrow, nursing a head injury, and she had blood on her chest.

Deputy Camp approached English to confirm her identity and asked if she needed help. English gave her name but denied needing medical attention. Camp radioed for medical assistance anyway. At 9:10 p.m., Camp "detained" English. He told English that she was reportedly "the primary aggressor" in the domestic incident. Camp "searched" English, placed her in handcuffs, and transported her in the backseat of his cruiser to the residence, arriving at 9:15 pm. The record does not reveal the extent of the search performed by Camp.

---

[1] "Under established principles of appellate review, we will state the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court, and will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence." *Hill*, 264 Va. at 543.

[2] Camp testified that he was accompanied by a "ride-along" who was in "training."

- 2 -

Deputy Jason Hager arrived in his cruiser about a minute later. Camp walked up to the front door of the residence to speak with Hernandez while Hager stayed by Camp's patrol car. Deputy Kyle McGinnis also responded to the scene and joined Camp.

Hernandez repeated to Camp that English had struck Branch with a bottle and that Hernandez had hit English in the head with a flashlight. But she would not let Camp inside, claiming that Branch had left. After Camp threatened to charge her with obstruction, however, Hernandez allowed Camp to search for Branch; he was not there.

In the meantime, Deputy Hager stood by the patrol car, with English sitting in the backseat. Video from Hager's body camera was admitted into evidence at trial. Hager testified that, when he arrived at the scene, he understood that English had not been arrested and was simply being detained. According to standard procedure, Camp would have informed Hager upon his arrival if Camp had arrested English.

When Hager asked English if she needed medical attention, English became irate and repeatedly insulted him. Hager said that he read English her *Miranda*[3] rights to err on the side of caution. At about 9:24 p.m., Hager noticed that English had slipped out of her handcuffs. He removed English from the car to put them back on. English asked—"do I [have] to go to an ambulance, with handcuffs, with my head bleeding?"—to which Hager responded, "yes." At about the same time, emergency medical responders arrived to treat English's injuries, and Camp returned from the house.

While they all stood outside the patrol car and Hager struggled to "double-lock" the handcuffs, English became more agitated, yelling racial epithets and profanity, and threatening to fight Hager. English suddenly turned and "bucked" at him, headbutting his chest and striking him with her shoulder. She then "mule kicked [his] right knee."

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The deputies arrested English for assault on a law-enforcement officer. In total, 23 minutes had elapsed from when English was first detained until she attacked Hager. Deputy Camp tried but failed to locate Branch. Unable to find the "primary victim," Camp concluded his investigation. Camp testified that he would have released English if she had not assaulted Hager.

A grand jury indicted English for assault on a law-enforcement officer in violation of Code § 18.2-57(C). Before trial, English moved to dismiss the indictment. She argued that by handcuffing and searching her, transporting her in a patrol car, and reading *Miranda* warnings to her, the deputies effected a de facto arrest without probable cause. English argued that she used reasonable force to resist that illegal arrest. Alternatively, English asked the trial court to find that her arrest was unlawful and to let the jury decide whether her resistance was reasonable. The prosecution responded that English's seizure was merely an investigatory detention until she was arrested for assaulting Hager. The circuit court agreed, finding that English had been "detained clearly for investigative purposes."

After the close of evidence, the trial court denied English's motion to strike and again rejected her claim that her detention was unlawful. The court found that English "was being detained temporarily" and that "there was an active investigation going on based on a credible report corroborated by physical evidence that a domestic assault had occurred." The court noted that every witness, including English, testified that "she was told that she was being detained and not arrested." The court observed that the investigation continued even after English's arrest for assaulting Deputy Hager. The court concluded that "the circumstances and length of her detention were not unreasonable" and there "was no evidence" that her detention was unlawful.

The jury found English guilty of assaulting a law-enforcement officer, and the court sentenced her to a year's imprisonment with five months suspended. English noted a timely appeal.

ANALYSIS

"[W]hen the issues are the lawfulness of an arrest and the reasonableness of force used to resist an unlawful arrest, the ultimate questions involve law and fact and are reviewed *de novo* on appeal." *Doscoli v. Commonwealth*, 66 Va. App. 419, 424-25 (2016) (quoting *Brown v. City of Danville*, 44 Va. App. 586, 603 (2004)). We likewise "review *de novo* whether a police officer had probable cause to make an arrest." *Id.* at 424.

"The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." Code § 1-200. "Under the common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest." *Hill*, 264 Va. at 546. "The underlying rationale supporting this common law right is the 'provocation' of an illegal arrest, which operates to excuse an assault directed at thwarting the unlawful arrest." *Id.* at 547. "Because of the danger of violence implicated in resisting arrest, 'the overall trend in a majority of states has been toward abrogation of the common law right to use reasonable force to resist an unlawful arrest.'" *Doscoli*, 66 Va. App. at 426 n.2 (quoting *Hill*, 264 Va. at 548 n.2). But we have recognized that, however wise it might be to change the common-law rule, "the authority to abrogate the common law rests with the General Assembly and not with this Court." *Id.*

Still, the Supreme Court held in *Hill* that the common-law privilege to use reasonable force to resist an unlawful *arrest* does not apply when the person is seized as part of an investigative *detention*. 264 Va. at 547. The Court reasoned that an "investigative detention

- 5 -

constitutes a brief, though not inconsequential, restriction on an individual's freedom of movement." *Id.* So there is no right to use force to resist a detention, even an "unlawful" one. *Id.* at 548.

### A. *We assume without deciding that English was arrested.*

Both sides agree that the threshold question is whether English was detained or arrested when Camp handcuffed her, placed her in the backseat of his cruiser, and transported her to the scene of the reported assault on Branch. "During [an investigatory] stop, the individual is not free to leave, but he is not under arrest." *White v. Commonwealth*, 267 Va. 96, 104 (2004). There can be "difficult line-drawing problems in distinguishing an investigative stop from a *de facto* arrest." *United States v. Sharpe*, 470 U.S. 675, 685 (1985). No rigid time limitations or bright-line rules differentiate them. *Id.* The "scope of the intrusion permitted [during an investigatory stop] will vary" with each case. *Florida v. Royer*, 460 U.S. 491, 500 (1983).

When evaluating the suspect's "custodial status," a court "must determine 'how a reasonable person in the suspect's situation would have understood his circumstances.'" *Keepers v. Commonwealth*, 72 Va. App. 17, 34 (2020) (quoting *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 41 (2019)). Courts consider, among other factors, "whether the police used physical restraints, displayed their weapons, engaged in physical contact, or told the suspect he was free to leave." *Id.* "The number of officers present and whether the police 'engaged in other incidents of formal arrest such as booking' are also probative of custodial status." *Id.* (quoting *Alvarez Saucedo*, 71 Va. App. at 41). Courts may also "consider 'the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual.'" *Id.* at 35 (quoting *Harris v. Commonwealth*, 27 Va. App. 554, 565 (1998)). "No single factor is dispositive . . . ." *Id.* (quoting *Aldridge v. Commonwealth*, 44 Va. App. 618, 642 (2004)).

The Commonwealth argues that Deputy Camp merely detained English pending his investigation into whether she had assaulted Branch. The Commonwealth notes that both deputies described English as having been "detained," not arrested, and that English herself testified that Deputy Camp told her, "I wasn't under arrest, but in order to ride in the car that was procedure for him to put the cuffs on me." The Commonwealth argues that Deputy Camp's "search" of English was not necessarily a search incident to arrest, but a *Terry* frisk—something that also qualifies as a Fourth Amendment "search," albeit one limited to checking for weapons to protect the safety of the officer and others. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The Commonwealth also points to our opinion in *Lawson v. Commonwealth*, 55 Va. App. 549 (2010), where we said that "[d]rawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for *Miranda* purposes." *Id.* at 559 (quoting *Harris*, 27 Va. App. at 566).

On the other hand, our Supreme Court held in *Dixon v. Commonwealth*, 270 Va. 34 (2005), that the combination of "being restrained in handcuffs and being locked in a police patrol car" can lead a reasonable person to believe that he has been arrested, thereby triggering his entitlement to *Miranda* warnings. *Id.* at 40-41. The Court said that

> [w]hile the presence of either of these factors, in the absence of the other, may not result in a curtailment of freedom ordinarily associated with a formal arrest, the presence of both factors compels the conclusion that a reasonable person subjected to both restraints would conclude that he was in police custody.

*Id.* at 41. *But see Thomas v. Commonwealth*, 16 Va. App. 851, 857-58 (1993) (holding that the defendant who was handcuffed and transported in the backseat of a police cruiser was detained, not arrested, when he implicitly consented to be transported to the scene of the reported crime), *aff'd en banc*, 18 Va. App. 454 (1994).

We find it unnecessary to resolve whether English was detained or arrested, however, for even assuming that English's detention amounted to an arrest, we conclude below that the arrest was supported by probable cause. Resolving this appeal on that basis is thus "the best and narrowest grounds" for the decision. *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022).

*B. Probable cause supported English's arrest for assault and battery.*

"While a person is entitled to use reasonable force to resist an unlawful arrest, he is not entitled to resist a lawful arrest." *McCracken v. Commonwealth*, 39 Va. App. 254, 262 (2002) (en banc). Probable cause for a lawful arrest "exists when the facts and circumstances known to the officer 'are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed.'" *Park v. Commonwealth*, 74 Va. App. 635, 646 (2022) (quoting *Al-Karrien v. Commonwealth*, 38 Va. App. 35, 47 (2002)). Although probable cause requires "more than a 'mere suspicion,' it is not necessary for the facts to be 'sufficient to convict' the accused of the offense." *Slayton v. Commonwealth*, 41 Va. App. 101, 107 (2003) (quoting *Gomez v. Atkins*, 296 F.3d 253, 262 (4th Cir. 2002)). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983)). "Probable cause 'is not a high bar.'" *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

Probable cause "is an objective standard that focuses on the totality of the facts and circumstances." *Park*, 74 Va. App. at 646. "To determine whether an officer had probable cause for an arrest, 'we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.'" *Wesby*, 138 S. Ct. at 586 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "[T]he proper inquiry focuses on what an objective officer could reasonably believe."

*Curley v. Commonwealth*, 295 Va. 616, 622 (2018) (alteration in original) (quoting *Evans v. Commonwealth*, 290 Va. 277, 287 (2015)).

Sheriff's deputies may lawfully arrest a suspect "without a warrant for an alleged misdemeanor not committed in their presence involving . . . assault and battery . . . when any such arrest is based on probable cause upon reasonable complaint of the person who observed the alleged offense." Code § 19.2-81(G).[4]  The Fourth Amendment does not prohibit arrests for misdemeanors "committed outside the presence of the arresting state officer." *Penn v. Commonwealth*, 13 Va. App. 399, 407 (1991), *aff'd*, 244 Va. 218 (1992) (per curiam).[5]

We find that Deputy Camp had probable cause to arrest English for the reported misdemeanor assault on Branch.  Hernandez told the 911 operator that English hit Branch with a bottle and that, to defend her brother, Hernandez had struck English with a flashlight.  Hernandez was therefore "the person who observed the alleged offense." Code § 19.2-81(G).  The dispatcher relayed that report to Deputy Camp and also advised him of English's multiple convictions for crimes of violence, as well as English's height, weight, skin color, and eye color. *See White v. Commonwealth*, 24 Va. App. 234, 240 ("[S]o long as the officer . . . has knowledge of facts establishing probable cause, it is not necessary for the officers actually making the arrest or conducting the search to be personally aware of those facts." (quoting *United States v. Laughman*, 618 F.2d 1067, 1072 (4th Cir. 1980))), *aff'd en banc*, 25 Va. App. 662 (1997).

---

[4] *See also* Code § 18.2-57(A) ("Any person who commits a simple assault or assault and battery is guilty of a Class 1 misdemeanor . . . .").

[5] Although the Supreme Court of the United States has not yet resolved "whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests," *Atwater v. City of Lago Vista*, 532 U.S. 318, 340 n.11 (2001), "lower courts have rather consistently concluded" that an officer can "make a warrantless arrest on probable cause for a misdemeanor not occurring in his presence," 3 Wayne R. LaFave, *Search & Seizure: A Treatise On The Fourth Amendment* § 5.1(b) (6th ed. 2022).

Seven minutes after the 911 call, Deputy Camp encountered English. She was walking along the snowy road, about a tenth of a mile away from the reported crime scene. English matched the suspect's description and correctly identified herself. She was not dressed appropriately for the inclement weather. English had an injury to her head, consistent with Hernandez's report that she had hit English with a flashlight to protect her brother after English reportedly hit him with a bottle. A reasonable officer could find from those facts "a probability or substantial chance," *Wesby*, 138 S. Ct. at 586, that English had committed an assault and battery on Branch and was leaving the scene, thus allowing for English's arrest under Code § 19.2-81(G).

To be sure, Deputy Camp and Deputy Hager both testified that they had only "detained" English, not arrested her. And when Deputy Camp could not locate Branch, he concluded his investigation, never charging English with the reported assault on Branch. Deputy Camp even said that he would have released English had she not assaulted Deputy Hager.

But in examining whether a reasonable officer in Camp's position had probable cause to arrest English for the reported assault and battery on Branch, the deputies' explanation of what they subjectively thought at the time "does not affect our analysis." *Park*, 74 Va. App. at 646 n.3. "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren v. United States*, 517 U.S. 806, 814 (1996). Thus, an "officer's 'action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed *objectively*, justify the action."'" *Mason v. Commonwealth*, 64 Va. App. 292, 301 (2015) (en banc) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006)). In other words, the "'officer's *subjective characterization* of observed conduct is *not relevant*' to an objective application of the Fourth Amendment." *Id.* at 302 (quoting *Jones v. Commonwealth*, 279 Va. 665, 673 (2010)).

- 10 -

"So strong is this principle that, even when an officer's testimony shows that he misjudged the legal basis for the stop, his subjective misjudgment does not undermine the objective validity of a stop that could be based on a wholly different legal basis." *Id.* at 302 n.5.[6]

Nor does it matter to the probable-cause analysis that it may well have been wiser for Deputy Camp to have more diligently investigated the assault and battery allegations before arresting English. For "[w]hile best practices may dictate that the police obtain both sides of a story where practicable, the law simply does not mandate such diligence. Once probable cause is established, 'an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.'" *Cameron v. Craig*, 713 F.3d 1012, 1019 (9th Cir. 2013) (quoting *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)).

In short, because Deputy Camp had probable cause to arrest English for the reported assault and battery on Branch, it does not matter that Deputies Camp and Hager both described English as having been only detained, not arrested.

CONCLUSION

Deputy Camp had probable cause to arrest English for the reported assault and battery on Branch. So even assuming for argument's sake that English's detention amounted to an arrest, she "had no legal right to resist the lawful arrest." *Doscoli*, 66 Va. App. at 430.

*Affirmed*.

---

[6] It likewise does not matter that English was ultimately charged and convicted for a *different* crime from the one for which she could have been lawfully arrested earlier. *See Doscoli*, 66 Va. App. at 429; *Slayton*, 41 Va. App. at 108-09; *Golden v. Commonwealth*, 30 Va. App. 618, 624-25 (1999).

- 11 -