COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Causey
Argued at Richmond, Virginia

UNPUBLISHED

JAYQUAN SHEMAR GRANDERSON

MEMORANDUM OPINION* BY
v.     Record No. 0996-22-2     CHIEF JUDGE MARLA GRAFF DECKER
JUNE 27, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin, Sr., Judge

Nicole M. Gibson, Assistant Public Defender II, for appellant.

Rachel A. Glines, Assistant Attorney General (Jason S. Miyares,
Attorney General; Maureen E. Mshar, Assistant Attorney General,
on brief), for appellee.


Jayquan Shemar Granderson appeals his convictions for simultaneously possessing a

firearm and a Schedule II controlled substance and for possessing cocaine in violation of Code

§§ 18.2-308.4 and -250. He argues that the trial court erred in denying his pretrial motion to

suppress the evidence. We hold that reasonable suspicion supported the investigatory stop and

accompanying pat down that led to the discovery of the firearm and cocaine. In addition, the

arrest was supported by probable cause. As a result, we affirm the convictions.

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND[1]

On the afternoon of January 9, 2021, Officer Baek and Sergeant Haskins, with the Petersburg Police Department, responded to a report of a "subject with a gun" at a specified apartment building. The subject left before they arrived. The two officers spoke with the Tucker family, who had called 911 to report the incident. The officers then left and parked a block away from the Tuckers' apartment building.

A second 911 call reported that someone with a gun had trapped the Tucker family inside their apartment. Officer Baek was dispatched to the location and returned to the Tuckers' apartment complex in "less than [ten] seconds." When he arrived, he saw the appellant about thirty feet away "right at the door" of the apartment building where the Tuckers' apartment was located. The appellant was the only person Baek saw outside the building. It appeared that the appellant had "just walked out from the door" and was walking quickly away from it. As Officer Baek, who was in uniform, got out of his police car and approached the appellant, he saw him tuck a "black object" into the front waistband of his pants. Baek estimated that he was twenty-two feet from the appellant at that time.

Officer Baek believed that the appellant matched the description of the subject with the gun that he received over the police radio. Baek was "concern[ed]" that the black object that the appellant tucked into his pants when he saw the officer was a firearm. Officer Baek and Sergeant Haskins detained the appellant, and Baek patted him down. During the pat down, Baek felt a "very hard object" near the appellant's "private area" under the beltline of his pants. The officer removed

---

[1] Under the applicable standard of review, this Court views the evidence in the light most favorable to the Commonwealth, as the prevailing party below. *See Hill v. Commonwealth*, 297 Va. 804, 808 (2019). This deferential review includes giving the Commonwealth "the benefit of any reasonable inferences" from the evidence. *Id.* (quoting *Commonwealth v. White*, 293 Va. 411, 413 (2017)).

the object, which was a black firearm. After finding the gun, Baek searched the appellant and found cocaine in one of his pockets.

The appellant filed a motion to suppress the evidence found as a result of the stop and subsequent search. At the pretrial suppression hearing, Officer Baek testified about the encounter. On cross-examination, defense counsel played a portion of Baek's body camera footage to refresh his memory about the description of the subject he received. Baek then testified that the radio dispatcher said the suspect wore blue jeans and a blue jacket.[2] In contrast to this description, the officer stated that the appellant wore dark pants and a "gray hoodie jacket."

Officer Baek explained that "[a]s soon as" the appellant saw the officers walking toward him, "his hands quickly just [went] into his beltline." Baek ordered him to stop, but the appellant did not initially comply. The appellant stopped only when Baek and a second officer blocked his path.

In support of his motion, the appellant argued that he did not match the description Officer Baek received from dispatch and, therefore, "a single furtive hand movement" did not provide reasonable suspicion to "stop and search" him. Defense counsel noted that Officer Baek did not know before the search that the object that the appellant tucked into his pants was a firearm. Counsel argued that the officer's suspicion amounted to a "mere hunch."

---

[2] Our analysis of the description given to Baek includes the differences in clothing described versus what the appellant wore at the time of the stop. We recognize that the appellant argues on appeal that the description of a suspect wearing his hair in an "afro" did not match his actual hairstyle of short hair. However, the record does not contain evidence of the description given of the suspect's hair. The recording from the body camera, which recorded the description received, was not entered into evidence. When defense counsel asked Officer Baek if the suspect was described as having an "afro," Baek responded that he did not remember the particular hairstyle. *See generally Jones v. Commonwealth*, 277 Va. 171, 177-78 (2009) (noting that on appeal, the party challenging a denial of a motion to suppress bears the burden of showing the denial was error); *Clarke v. Commonwealth*, 60 Va. App. 190, 199 (2012) ("It is [the] appellant's burden to provide this Court with a record from which it can decide the issues in the case.").

The trial court denied the motion to suppress. The court found that when Officer Baek returned to the Tucker residence after the second 911 call "that somebody was being held inside with a gun," he saw the appellant "standing outside of [that] very residence." In addition, the court noted the connection between the call about a suspect with a firearm and Baek's observation of "what he believe[d] to be the [appellant] tucking in his beltline a black object." The court pointed out that the fact that the appellant's clothing did not match the description was not "fatal." In the end, it concluded that Officer Baek had "reasonable, articulable suspicion to believe that the [appellant] was the person who was inside the home holding the Tucker family hostage with a gun."

A bench trial followed, and the appellant was convicted of possession of a firearm while possessing a Schedule II controlled substance and possession of cocaine. He was sentenced to a total of twelve years in prison with ten years suspended.

ANALYSIS

The appellant contends that the trial court erred by denying his motion to suppress. He argues that the officer lacked reasonable suspicion to stop him because the totality of the circumstances did not support an inference that he was the person described by the Tucker family.

An appellant's claim that he "was seized in violation of the Fourth Amendment presents a mixed question of law and fact." *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)). "[T]he ultimate question[] of reasonable suspicion" is reviewed de novo while findings of fact are reviewed for clear error. *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021). At this juncture, the appellant bears the "burden to show that . . . the trial court committed reversible error." *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)).

- 4 -

"The Fourth Amendment protects people from unreasonable searches and seizures." *Williams v. Commonwealth*, 71 Va. App. 462, 476 (2020). This "protection extends to brief investigatory stops 'that fall short of traditional arrest.'" *Moore v. Commonwealth*, 276 Va. 747, 757 (2008) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). The amendment's requirements are met "if the officer's action in making an investigatory stop is supported by 'reasonable suspicion to believe that criminal activity "may be afoot."'" *Id.* (quoting *Arvizu*, 534 U.S. at 273).

The legal principles that apply here are well settled. Under the "[r]easonable, articulable suspicion" standard, an officer must have, "at the time of the stop, 'a particularized and objective basis for suspecting the particular person.'" *Mitchell v. Commonwealth*, 73 Va. App. 234, 246 (2021) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). "Whether reasonable suspicion exists is 'based on an assessment of the totality of the circumstances.'" *McArthur v. Commonwealth*, 72 Va. App. 352, 359 (2020) (quoting *Harris v. Commonwealth*, 276 Va. 689, 695 (2008)).

"[T]here are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists . . . ." *Middlebrooks v. Commonwealth*, 52 Va. App. 469, 479 (2008) (first alteration in original) (quoting *Hoye v. Commonwealth*, 18 Va. App. 132, 134-35 (1994)). This standard requires "more than an unparticularized suspicion or 'hunch.'" *Sidney v. Commonwealth*, 280 Va. 517, 523 (2010) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). At the same time, it "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Raab v. Commonwealth*, 50 Va. App. 577, 581 (2007) (en banc) (quoting *Arvizu*, 534 U.S. at 274). Finally, whether the officer's conduct is reasonable "is judged from the perspective of a[n objectively] reasonable officer on the scene allowing for the need of split-second decisions."

*McArthur*, 72 Va. App. at 360 (alteration in original) (quoting *Thompson v. Commonwealth*, 54 Va. App. 1, 7 (2009)).

The appellant contends that Officer Baek did not have a reasonable, articulable suspicion that he was the man who entered the Tucker residence with a firearm. He does not contest that police dispatch reported ongoing criminal activity. Rather, he argues that Officer Baek's suspicion that he was the criminal actor was not reasonable because his clothes and hairstyle did not match the description received on the 911 call. We disagree.

In this case, the reason for the stop began with two 911 emergency calls relayed by dispatch stating that an armed man had approached and entered a specific occupied apartment located in a particular building. Officer Baek testified that, within ten seconds of receiving the second call about the man with a gun, he returned to the apartment building from which the calls originated. When he arrived, the appellant was the only person in front of the building, and it appeared that he was just leaving. *See Miller v. Commonwealth*, 16 Va. App. 977, 980 (1993) (recognizing that "proximity to the scene of a crime" can be a factor supporting a reasonable articulable suspicion). Additionally, when the appellant saw Officer Baek approaching in uniform, he tucked a black object into the front of his pants and quickly walked away from the building. There is no doubt that the fact that the appellant's clothing somewhat differed from the general description Baek had received was relevant to the trial court's evaluation of reasonable suspicion. This fact, however, is not dispositive. Instead, it was a fact for the court as trier of fact to consider along with the other circumstances surrounding the stop. *See McArthur*, 72 Va. App. at 359 (explaining that the totality of the circumstances determines whether a reasonable suspicion exists).

Based on the instant record, articulable facts supported the reasonable suspicion that the appellant was the person who had just recently entered the Tucker residence with a firearm. *See*

*United States v. Moore*, 817 F.2d 1105, 1107 (4th Cir. 1987) (holding that the stop was justified because the police officer responded to the building alarm immediately, the defendant was the only person in the area, and it was nighttime). The facts and circumstances apparent to the officer at the time of the stop "were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law [had occurred, or] was occurring." *See Mason v. Commonwealth*, 291 Va. 362, 368 (2016). On appeal, we "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Long*, 72 Va. App. at 712 (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). And the law makes clear that "[t]he possibility that an officer ultimately may prove to be mistaken . . . does not negate, in and of itself, the officer's reasonable, articulable suspicion." *Mitchell*, 73 Va. App. at 247. Consequently, we hold that the circumstances permitted the officer to lawfully stop, seize, and detain the appellant to conduct a brief investigation.

The appellant contends that Officer Baek was "not at all sure the man he [saw was] the suspect." However, Baek did not have to be certain that the appellant was the man with the gun to conduct a limited stop to further investigate the reported crime. *See Raab*, 50 Va. App. at 581. We conclude that Officer Baek had sufficient justification to believe that the appellant was the criminal actor who moments earlier, while armed, trapped the Tuckers inside their apartment in that very building that the appellant was leaving when the police arrived just seconds after the second call was dispatched.

The appellant also argues that Officer Baek did not have reasonable suspicion that he was armed and dangerous and therefore was not authorized to conduct a pat down for weapons after making the initial stop. Further, he suggests that probable cause did not support the subsequent

arrest or search of his person that resulted in the discovery of the cocaine. We address these contentions in turn.[3]

To conduct a weapons pat down of a person, an officer must reasonably suspect that the person is "armed and presently dangerous." *Terry v. Ohio*, 392 U.S. 1, 24 (1968); *see Jones v. Commonwealth*, 279 Va. 665, 672 (2010) (holding that an investigating officer "may conduct a limited pat down for weapons if the officer reasonably believes that the criminal suspect may be armed and dangerous"). As discussed above, the circumstances supported the reasonable belief that the appellant was the individual who, moments before, had a gun and trapped the Tuckers inside their apartment. Consequently, the pat down for weapons was supported by a reasonable suspicion that the appellant was armed and dangerous.

In addition, if the facts establish probable cause to arrest, law enforcement may conduct a search of the arrestee's person incident to that arrest. *See, e.g.*, *Joyce v. Commonwealth*, 56 Va. App. 646, 657 (2010). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). "[A]n abduction occurs when a perpetrator, by means of 'force, intimidation or deception, and without legal justification or excuse,' exercises control over the victim 'with the intent to deprive such [victim] of his personal liberty.'" *Walker v. Commonwealth*, 74 Va. App. 475, 490 (2022) (second alteration in original) (quoting Code § 18.2-47(A)). Here, the evidence, viewed objectively and in the light most favorable to the Commonwealth, establishes probable cause to arrest as a matter of law.

---

[3] The Commonwealth asserts that the appellant did not make these arguments below. We assume without deciding that he did so. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (holding that where a court's ability to review an issue on appeal is "in doubt," the court "may 'assume without deciding' that the issue can be reviewed provided that this permits [the Court] to resolve the appeal on the best and narrowest ground[]"); *Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015) (declining to consider the Commonwealth's 5A:18 argument and instead addressing the merits).

The appellant's location and behavior, as well as his possession of a firearm, established a probability that he was the armed person who had trapped the Tuckers inside their apartment without legal justification. *See generally Murphy v. Commonwealth*, 264 Va. 568, 574-75 (2002) (analyzing whether the circumstances of the pat down provided probable cause for the officer to seize a plastic bag from the defendant's pocket). Consequently, the record, viewed under the proper standard, establishes probable cause to believe that the appellant had abducted the Tuckers. *See generally Slayton v. Commonwealth*, 41 Va. App. 101, 109 (2003) ("Probable cause . . . turns only on '"objective facts," not the "subjective opinion" of a police officer.'" (quoting *Golden v. Commonwealth*, 30 Va. App. 618, 625 (1999))). These facts provided an objectively reasonable basis for conducting a search incident to arrest.

CONCLUSION

The appellant's challenge to the investigatory stop fails because the totality of the circumstances supports the conclusion that the officer had a reasonable articulable suspicion that the appellant was engaged in illegal activity. Therefore, the stop was lawful. We hold that reasonable suspicion also supported the weapons frisk. In addition, the arrest was supported by probable cause. Consequently, we hold that the trial court did not err in denying the appellant's motion to suppress, and we affirm his convictions.

*Affirmed.*